BRAD D. BRIAN (CA Bar No. 079001, *pro hac vice*)
Brad.Brian@mto.com
BRUCE A. ABBOTT (CA Bar No. 159639, *pro hac vice*)
Bruce.Abbott@mto.com
HAILYN J. CHEN (CA Bar No. 237436, *pro hac vice*)
Hailyn.Chen@mto.com
PETER C. RENN (CA Bar No. 247633, *pro hac vice*)
Peter.Renn@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue, Thirty-Fifth Floor
Los Angeles, CA  90071-1560
Telephone:   (213) 683-9100

PATRICIA LEE REFO (AZ Bar No. 0017032)
prefo@swlaw.com
Snell & Wilmer LLP
One Arizona Center, 400 East Van Buren Street
Phoenix, Arizona  85004-2202
Telephone:   (602) 382-6290

Attorneys for Defendant KB HOME

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| NATHANIEL JOHNSON and KRISTEN PETRILLI; ABRAHAM NIETO; GLORIA and CHARLES LEWIS; FABIAN and MARIA PATRON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>KB HOME, a Delaware corporation; COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation, COUNTRYWIDE HOME LOANS, INC., a New York corporation; COUNTRYWIDE MORTGAGE VENTURES, LLC, a Delaware company; COUNTRYWIDE-KB HOME LOANS, an unincorporated association of unknown form; LANDSAFE, INC., a Delaware Corporation; LANDSAFE APPRAISAL SERVICES, INC., a California corporation; and DOES 1 through 1000,<br><br>Defendants. | CASE NO. CV-09-972-PHX-FJM<br><br>**DEFENDANT KB HOME'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Oral Argument Requested |

8436660.4

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   PLAINTIFFS' ALLEGATIONS ......................................................................... 3

III.  ARGUMENT ...................................................................................................... 4

    A.    The Complaint Fails to State a Claim Under RICO................................... 4

        1.    Any Relief To Which Plaintiffs Might Be Entitled Must Be Based Upon RESPA, Not RICO ............................................................ 4

        2.    The PSLRA Likewise Bars Plaintiffs' RICO Claim Because The Alleged Fraud Occurred in Connection With The Purchase or Sale of a Security ............................................................................... 7

        3.    Plaintiffs Also Fail To Plead a Pattern of Racketeering Activity With The Requisite Particularity................................................ 10

    B.    The California UCL Is Inapplicable To This Arizona Action ............................. 12

        1.    The California Unfair Competition Law Does Not Apply Extraterritorially................................................................... 12

        2.    Even Assuming The Applicability of The California UCL, Plaintiffs Have Failed To Plead a Cognizable Claim................................. 14

    C.    Plaintiffs Fail To State a Claim for Unjust Enrichment........................................ 15

IV.   CONCLUSION.................................................................................................. 16

- i -

# TABLE OF AUTHORITIES

**Page**

## FEDERAL CASES

*Adkins v. Mireles,*
    526 F.3d 531 (9th Cir. 2008) ........................................................................... 5

*Ashcroft v. Iqbal,*
    -- U.S. --, 129 S. Ct. 1937 (2009) ................................................................ 13

*Augustine v. FIA Card Servs., N.A.,*
    485 F. Supp. 2d 1172 (E.D. Cal. 2007) ....................................................... 14

*Bald Eagle Area Sch. Dist. v. Keystone Finan., Inc.,*
    189 F.3d 321 (3d Cir. 1999) ............................................................................ 7

*Cendeno v. IndyMac Bancorp, Inc.,*
    No. 06 CIV. 6438 (JGK), 2008 WL 3992304
    (S.D.N.Y. Aug 26, 2008) ....................................................................... 6, 7, 14

*Churchill Village, LLC v. Gen. Elec. Co.,*
    169 F. Supp. 2d 1119 (N.D. Cal. 2000),
    *aff'd* 361 F.3d 566 (9th Cir. 2004) ............................................................... 13

*Crockett & Myers, Ltd. v. Napier, Fitzgerald & Kirby, LLP,*
    440 F. Supp. 2d 1184 (D. Nev. 2006) ..................................................... 15, 16

*Hardin v. City Title & Escrow Co.,*
    797 F.2d 1037 (D.C. Cir. 1986) ...................................................................... 6

*Howard v. Am. Online, Inc.,*
    208 F.3d 741 (9th Cir. 2000),
    *cert denied,* 531 U.S. 828 (2000) .............................................................. 9, 10

*In re Countrywide Finan. Corp. Derivative Litig.,*
    554 F. Supp. 2d 1044 (C.D. Cal. 2008) ......................................................... 9

*In re Padilla,*
    222 F.3d 1184 (9th Cir. 2000) ......................................................................... 5

*ITI Internet Servs., Inc. v. Solana Capital Partners, Inc.,*
    No. C05-2010Z, 2006 WL 1789029 (W.D. Wash. Jun. 27, 2006) ................ 9

*McKesson Inc. v. New York State Common Retirement Fund,*
    339 F.3d 1087 (9th Cir. 2003) ....................................................................... 15

*Meinhold v. Spring Spectrum, L.P.,*
    No. CVS-07-00456 FCD EFB, 2007 WL 1456141
    (E.D. Cal. May 16, 2007) .............................................................................. 13

*Norman v. Niagara Mohawk Power Corp.,*
    873 F.2d 634 (2d Cir. 1989) ............................................................................ 5

*Odom v. Microsoft Corp.,*
    486 F.3d 541 (2007) ...................................................................................... 10

*Powers v. Wells Fargo Bank NA,*
    439 F.3d 1043 (9th Cir. 2006),
    *cert. denied,* 549 U.S. 988 (2006) .................................................................. 7

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Rosenbaum Capital, LLC v. Kennedy*,
    09-537-JVS-RNB (C.D. Cal., filed May 5, 2009) .................................................. 9

*Rubio v. Capitol One Bank (USA), N.A.*,
    572 F. Supp. 2d 1157 (C.D. Cal. 2008) ............................................................ 14

*Sell v. Zions First Nation Bank*,
    No. 05-0684 PHX SRB, 2006 WL 322469 (D. Ariz. Feb. 9, 2006) ...................... 8

*Smith v. Fidelity Consumer Discount Co.*,
    898 F.2d 907 (3d Cir. 1990) ............................................................................. 5

*Smith v. Jackson*,
    84 F.3d 1213 (9th Cir. 1996) ........................................................................... 5

*Spears v. Washington Mut. Inc.*,
    No. 08-868 RMW, 2009 WL 605835 (N.D. Cal. Mar. 9, 2009) ...................... 6, 15

*Sutter Home Winery, Inc. v. Vintage Selections, Inc.*,
    971 F.2d 401 (9th Cir. 1992) ........................................................................... 15

*Swartz v. KPMG*,
    476 F.3d 756 (9th Cir. 2007) ....................................................................... 7, 10

*Trustees of Amalgamated Ins. Fund v. Geltman Indus. Inc.*,
    784 F.2d 926 (9th Cir. 1986) ........................................................................... 5

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ......................................................................... 11

*Wagh v. Metris Direct, Inc.*,
    348 F.3d 1102 (9th Cir. 2003) ......................................................................... 10

*Zaremski v. Keystone Title Assocs., Inc.*,
    884 F.2d 1391 (4th Cir. 1989) ......................................................................... 6

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ........................................................................... 12


STATE CASES

*Byars v. SCME Mortgage Bankers, Inc.*,
    109 Cal. App. 4th 1134 (2003) ........................................................................ 14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*,
    20 Cal. 4th 163 (1999) .................................................................................... 14

*Diamond Multimedia Sys., Inc. v. Superior Court*,
    19 Cal. 4th 1036 (1999) .................................................................................. 13

*Norwest Mortgage, Inc. v. Superior Court*,
    72 Cal. App. 4th 214 (1999) ....................................................................... 13, 15

*Sulta v. O'Brien*,
    488 P.2d 1021 (Ariz. Ct. App. 1971) ............................................................... 16

*Suzico, Inc. v. Maricopa County*,
    928 P.2d 693 (Ariz. Ct. App. 1996) ................................................................ 16

**TABLE OF AUTHORITIES**
(continued)

Page(s)

**FEDERAL STATUTES**

12 U.S.C. § 2607(a) ............................................................................................................. 4

12 U.S.C. § 2607(c) ............................................................................................................ 14

12 U.S.C. § 2607(c)(2) ......................................................................................................... 6

12 U.S.C. § 2614 .................................................................................................................. 6

15 U.S.C. § 78j(b) ................................................................................................................ 7

18 U.S.C. § 1962(c) ............................................................................................................ 10

18 U.S.C. § 1962(d) ........................................................................................................... 10

18 U.S.C. § 1964(c) ............................................................................................................. 7

28 U.S.C. § 1358 .................................................................................................................. 9

Anticounterfeiting Consumer Protection Act,
      Pub. L. No. 104-153, § 3, 110 Stat. 1386 (1996) ...................................................... 5

Private Securities Litigation Reform Act,
      Pub. L. No. 104-67, § 107, 109 Stat. 737 (1995) ...................................................... 7

**STATUTES - ARIZONA**

A.R.S. § 32-3633 ............................................................................................................... 15

**STATUTES - CALIFORNIA**

Cal. Bus. & Prof. Code § 17200 ....................................................................................... 12

Proposition 64, § (1)(a) .................................................................................................... 13

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) .............................................................................................. 1, 2, 10, 11

Fed. R. Civ. P. 12(b)(6)........................................................................................................ 1

Fed. R. Civ. P. 12(f) .......................................................................................................... 12

**FEDERAL REGULATIONS**

12 C.F.R. § 34.42 ............................................................................................................... 15

12 C.F.R. § 34.44 ............................................................................................................... 15

17 C.F.R. § 240.10b-5......................................................................................................... 7

1    Defendant KB Home hereby moves this Court to dismiss the claims asserted

2    against it pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).  In support of

3    the motion, KB Home submits the following memorandum of points and authorities.

4    **I.    INTRODUCTION**

5        It is an unfortunate reality of the recent housing bubble that many individuals who

6    purchased their homes at the height of that bubble in 2005-2006 found themselves shortly

7    thereafter owing significantly more money on their homes than they were worth.  That

8    was true regardless of who bought the home, who built the home, or who loaned the

9    money to purchase the home.  This unfortunate reality does not make for a very good

10   plaintiffs' class action lawsuit.

11       So the Plaintiffs' attorneys concocted a transparent and hollow new story:  the *real*

12   *reason* homebuyers are underwater has nothing to do with the worst housing meltdown

13   since the Great Depression; instead, it is the result of a supposed vast criminal conspiracy

14   between homebuilders (KB Home), lenders (Countrywide), and appraisers (Landsafe).

15   Appraisers, of course, do not set home prices.  Accordingly, the goal of this fanciful

16   conspiracy was simply to allow homebuyers to pay the price they had already agreed-

17   upon – a price that was set in a competitive market where buyers had hundreds of

18   different choices – old housing stock, new housing stock – from different homebuilders,

19   in different locations, at different prices.  Since Plaintiffs are not claiming that appraisers

20   were somehow colluding with builders and lenders to make Plaintiffs pay inflated prices,

21   the appraisers, apparently, should have seen that these market-driven prices were

22   excessive at the time and appraised the houses lower.  One suspects that all of us (now)

23   wish that we had such clairvoyance, whether it is for the price of homes, stocks, new

24   fangled debt instruments, or oil.

25       The attempt by Plaintiffs' counsel to rewrite the history of the housing market here

26   – as a matter of law – cannot stand, and their attempt to inject the Racketeer Influenced

27   and Corrupt Organizations Act ("RICO") and other statutes into highly regulated area of

28   the housing industry fails for the following reasons:

1    •    First, Congress has enacted a particular set of laws – the Real Estate Settlement Procedures Act ("RESPA") – that governs the relationships and rules between appraisers, lenders, and even homebuilders.  That specific statute, not RICO, governs here and the tactical choice by Plaintiffs' counsel not to assert claims under RESPA (because any such claims are time-barred) cannot be countenanced;

•    Second, and relatedly, a key component of the alleged RICO conspiracy was the ability to sell the inflated home loans into the secondary securities market and thereby pass the proverbial buck for the under-secured home loans onto someone else.  Congress, however, has enacted another set of laws – the federal securities laws – to deal with such alleged schemes and specifically *disallowed* the use of RICO in such situations.  The companion tactical choice by Plaintiffs' counsel not to assert claims under the federal securities laws (because those claims, too, are time-barred and Plaintiffs also lack standing) is similarly unavailing;

•    Third, for all their blunderbuss accusations of conspiracy, Plaintiffs identify exactly *two* purported misdeeds by KB Home (one, it referred homebuyers to Countrywide; and, two, it shared pending sales information with appraisers), neither of which is unlawful.  Accordingly, under Rule 9(b) and the RICO statute, the claim as pled cannot stand;

•    Fourth, Plaintiffs' invocation of California's Unfair Competition Law ("California UCL") fails because:  (a) the California UCL does not apply outside of California in this context; and (b) the alleged conduct is actually protected under RESPA's "safe harbor" provision and therefore cannot violate the California UCL; and,

•    Fifth, Plaintiffs' unjust enrichment claim cannot exist where (as here) there is a written contract between the parties.

## II.   PLAINTIFFS' ALLEGATIONS

Plaintiffs allege that they contracted to purchase homes in Arizona from KB Home in 2005.  First Amended Complaint ("FAC") ¶¶ 139, 142, & 146.  KB Home is one of the nation's largest home builders and has built thousands of homes in Arizona and throughout the United States.  Id. ¶ 2.

In order to help prospective homebuyers obtain mortgage loans, KB Home allegedly referred homebuyers to an unspecified Countrywide entity.  Id. ¶ 9.  As part of the mortgage loan application process, this Countrywide entity would in turn order an appraisal for the property from Landsafe, Inc., a subsidiary of Countrywide Financial Corporation and a provider of various real estate closing services.  Id. ¶¶ 9, 30.  Finally, once the appraisal order reached Landsafe, it was allegedly routed to a single Landsafe employee who was assigned the appraisal.  Id. ¶ 9.

Plaintiffs allege that the appraiser ultimately assigned to their properties, C.S. Heaton, performed substandard work that allegedly resulted in inflated appraisals.[1]  For example, Plaintiff Nathaniel Johnson alleges that he knew C.S. Heaton's appraisal was inflated because he had obtained another appraisal that was $40,000 lower.  Id. ¶ 128.  Despite this, he nevertheless chose to obtain a mortgage loan based upon the higher appraised value.  Id.  Plaintiffs Abraham Nieto and Fabian and Maria Patron similarly allege that the appraisals conducted by C.S. Heaton were purportedly deficient, id. ¶¶ 133, 147, because the comparison properties used in the valuation were not identical in all respects to their own properties.  E.g., id. ¶¶ 130 (interior upgrades different), 139 (criticizing adjustment for pool).

In Plaintiffs' view, all of their home appraisals were "too aggressive," id. ¶ 130 – as opposed to merely being a reflection of the rising nationwide housing bubble – and therefore all seven named defendants must have in fact orchestrated a scheme to inflate them.  This vast supposed RICO conspiracy – and not the subsequent collapse of the

---

[1] Curiously, Plaintiffs have not named C.S. Heaton Appraisal Services, Inc. as a defendant.

1  housing market – resulted in Plaintiffs' homes eventually being worth less than they

2  originally paid.

3      Although the complaint sprawls over fifty-five pages, the preceding few

4  paragraphs comprise the bulk of the material allegations, which are notably lacking in

5  any specific factual detail necessary to support KB Home's involvement in the alleged

6  scheme.  The remainder of the complaint relies on inflammatory statements, including

7  alleged insider stock sales by Countrywide executives, id. ¶ 46, alleged predatory lending

8  practices by Countrywide, id. ¶ 47, and allegations made in civil actions filed in other

9  parts of the United States, id. ¶¶ 103-123.  Indeed, Plaintiffs' counsel even goes so far as

10  to quote a complaint that they filed in California to corroborate the alleged scheme.  Id.

11  ¶¶ 122-123.  But Plaintiffs must plead their own, independent right to relief, which, as

12  discussed below, they have failed to do.

13  **III.**   **ARGUMENT**

14      **A.**    **The Complaint Fails to State a Claim Under RICO**

15           1.    Any Relief To Which Plaintiffs Might Be Entitled Must Be Based
16                Upon RESPA, Not RICO

17      The buying and selling of homes is a highly regulated area.  Among other laws,

18  Congress has enacted the Real Estate Settlement Procedures Act ("RESPA") to govern

19  real estate settlement services such as home appraisals.  Under RESPA, no person may

20  give or receive any "thing of value" in exchange for referring a real estate settlement

21  service, such as an appraisal.  12 U.S.C. § 2607(a).  Here, the complaint specifically

22  alleges that KB Home receives "things of value" such as predetermined loan approvals

23  for referring its business to Countrywide, FAC ¶ 66 (quotations in original), and that

24  Countrywide similarly receives "things of value" for referring its business to Landsafe

25  because it ultimately has common ownership in Landsafe, id. ¶ 172 (quotations in

26  original).

27      Taking Plaintiffs' allegations as true, it is RESPA – not RICO – that governs here.

28  Congress has identified the problem alleged in the complaint – real estate appraisal

1    kickback schemes – and tailored a statute to address it.  Unremarkably, across a variety of

2    different settings, courts have rejected the use of RICO as an end run around the more

3    specific statute that Congress intended to govern.  See, e.g., Smith v. Jackson, 84 F.3d

4    1213, 1217 (9th Cir. 1996) (affirming dismissal of copyright infringement claims merely

5    "reformulated" as RICO claims); Adkins v. Mireles, 526 F.3d 531, 542 (9th Cir. 2008)

6    (holding that claims within the purview of §§ 7 and 8 of National Labor Relations Act

7    cannot be brought as RICO claims); Smith v. Fidelity Consumer Discount Co., 898 F.2d

8    907, 914 (3d Cir. 1990) (finding that § 501 of the Depository Institutions Deregulation

9    and Monetary Control Act "preempted" RICO); Norman v. Niagara Mohawk Power

10   Corp., 873 F.2d 634, 637-38 (2d Cir. 1989) (holding that the Energy Reorganization Act

11   provides an exclusive remedy and therefore bars any RICO claim).

12        In Smith v. Jackson, for example, the Ninth Circuit rejected an attempt to plead

13   copyright infringement as a RICO violation, even though plaintiffs had recast the alleged

14   infringement as mail and wire fraud.  84 F.3d at 1217.  Notably, Congress subsequently

15   added copyright infringement as a predicate act under RICO, underscoring that when

16   Congress intends for violations of a detailed statutory scheme to come within RICO's

17   ambit, it says so – explicitly.  See Anticounterfeiting Consumer Protection Act, Pub. L.

18   No. 104-153, § 3, 110 Stat. 1386 (1996).  The result here is no different:  unless Congress

19   signals its intent that violations of RESPA should be actionable under RICO, this Court

20   should decline Plaintiffs' invitation to achieve that same effect indirectly.

21        It is well settled that a statute designed to address a particular harm should prevail

22   over a law of more general application.  See In re Padilla, 222 F.3d 1184, 1192 (9th Cir.

23   2000) ("[w]here both a specific and a general statute address the same subject matter, the

24   specific one takes precedence") (internal quotation marks and citation omitted); Trustees

25   of Amalgamated Ins. Fund v. Geltman Indus. Inc., 784 F.2d 926, 930 (9th Cir. 1986) ("a

26   specific statutory section qualifies a more general section and will govern, even though

27   the general provisions, standing alone, would encompass the same subject").

28        While Plaintiffs make vague gestures to RESPA in the context of their California

1    UCL claim, FAC ¶ 218, they do not allege an independent RESPA claim.  The reasons

2    are self-evident.  Any such claim would now be time-barred, because Plaintiffs' homes

3    were purchased and appraised in 2005-2006.  12 U.S.C. § 2614 (one-year statute of

4    limitations); FAC ¶¶ 139, 142, & 146.  While Plaintiffs have alluded to RESPA, used the

5    RESPA statutory phrase "things of value," and even requested that the Court apply

6    equitable tolling and estoppel to unspecified claims in the complaint, id. ¶¶ 156-165, their

7    decision to nevertheless omit a direct claim under RESPA speaks volumes about the

8    merits such a claim would possess.[2]

9         In addition to a RESPA claim being time-barred, RESPA contains a safe harbor

10   that would apply here.  The safe harbor expressly permits the payment of a bona fide

11   salary or compensation so long as the services are actually performed.  12 U.S.C. §

12   2607(c)(2).  In Cendeno, for example, the Court faced factual allegations similar to those

13   here and dismissed RESPA claims on the basis of the safe harbor.  Cendeno v. IndyMac

14   Bancorp, Inc., No. 06 CIV. 6438 (JGK), 2008 WL 3992304, at *1 (S.D.N.Y. Aug 26,

15   2008).  The plaintiffs there had brought a putative class action on behalf of homebuyers

16   whose loans were financed through IndyMac.  They alleged that IndyMac failed to

17   provide sufficient separation between its sales personnel and its valuation personnel,

18   which led to inflated appraisals.  Id. at *2.  But the Court dismissed the plaintiffs' RESPA

19   claims because it was clear that the appraisals were actually performed, and therefore

20   payment in exchange for those appraisals was permissible under the statutory safe harbor.

21   Id. at *4.  The result here is no different.[3]  Thus, Plaintiffs' complaint not only seeks to

22   _____

     [2]  Relatedly, many courts have held that the limitations period under RESPA is not
23   subject to tolling.  See Hardin v. City Title & Escrow Co., 797 F.2d 1037, 1039 (D.C.
     Cir. 1986) (holding that RESPA's limitations provision is jurisdictional and therefore
24   cannot be tolled); Zaremski v. Keystone Title Assocs., Inc., 884 F.2d 1391 (4th Cir.
     1989) (same) (unpublished table decision).

25   [3]  While the court in Spears reached a conclusion contrary to Cendeno, KB Home
     respectfully submits that Cendeno was the better-reasoned decision on this issue.  Spears
26   v. Washington Mut. Inc., No. 08-868 RMW, 2009 WL 605835, at *3 (N.D. Cal. Mar. 9,
     2009).  The court in Spears drew a distinction between compensation for appraisals –
27   which was undoubtedly within the safe harbor – and compensation for "inflated"
     appraisals – which was purportedly outside the safe harbor.  This distinction, however,
28   effectively eliminates any protection the safe harbor might provide, because any plaintiff

1   circumvent RESPA through the misapplication of RICO; it seeks to impose liability

2   where Congress has already made the substantive determination that no such liability

3   should attach.

4           2.      The PSLRA Likewise Bars Plaintiffs' RICO Claim Because The
                    Alleged Fraud Occurred in Connection With The Purchase or Sale of
5                   a Security

6

7           Congress not only enacted RESPA to govern home appraisal services, but also

8   amended RICO in 1995 to bar precisely the type of claim asserted here.  See Private

9   Securities Litigation Reform Act ("PSLRA"), Pub. L. No. 104-67, § 107, 109 Stat. 737

10  (1995).  Under the PSLRA, conduct that could have even *potentially* been challenged as

11  securities fraud can no longer give rise to a RICO claim.  18 U.S.C. § 1964(c) ("no

12  person may rely upon any conduct that would have been actionable as fraud in the

13  purchase or sale of securities to establish a violation of [RICO]").

14          The PSLRA bar is expansive.  A RICO claim cannot be based upon conduct that

15  might fall within the scope of either § 10(b) of the Securities Exchange Act of 1934, 15

16  U.S.C. § 78j(b), or Rule 10b-5, 17 C.F.R. § 240.10b-5, both of which make it unlawful

17  for any person to use any device, scheme, or artifice to defraud "in connection with" the

18  purchase or sale of any security.  A plaintiff cannot avoid this bar "by pleading mail

19  fraud, wire fraud, and bank fraud as predicate offenses . . . if the conduct giving rise to

20  those predicate offenses amounts to securities fraud."  Bald Eagle Area Sch. Dist. v.

21  Keystone Finan., Inc., 189 F.3d 321, 330 (3d Cir. 1999).

22          Thus, for example, a RICO claim based upon inflating the sale of stock, Swartz v.

23  KPMG, 476 F.3d 756 (9th Cir. 2007), or operating a Ponzi scheme, Powers v. Wells

24  Fargo Bank NA, 439 F.3d 1043, 1045 (9th Cir. 2006), *cert. denied*, 549 U.S. 988 (2006),

25

26  could plead that an appraisal failed to capture the "real" value of a home, even though the
    appraisal itself was undoubtedly performed.  Cendeno correctly recognized that this
27  distinction "attempts to modify the plain meaning of the safe harbor by requiring an
    analysis of the quality and price of the services actually performed.  That interpretation
28  exceeds the plain meaning of the statute." Cendeno, 2008 WL 3992304, at *4.

1   is barred.  Moreover, the phrase "in connection with" should be given a "broad reading,"

2   and it is sufficient that the scheme to defraud and the sale of securities coincide.  See Sell

3   v. Zions First Nation Bank, No. 05-0684 PHX SRB, 2006 WL 322469, at *8-9 (D. Ariz.

4   Feb. 9, 2006) (PSLRA barred RICO claim against operators of mortgage lending

5   companies engaged in alleged Ponzi scheme involving inadequately secured real estate

6   transactions).

7          Here, Plaintiffs allege that the mortgages at issue were first "re-packaged" as

8   securities and then "sold . . . in the secondary market to investors across the United States

9   and throughout the world."  FAC ¶ 193.  Countrywide then allegedly paid KB Home a

10  portion of the profits attributable to these secondary market sales.  Id. ¶¶ 80-81.  Plaintiffs

11  further contend that the sale of these securities was fraudulent, because "the lender and

12  secondary market end investor . . . were unaware of the true value of their asset."  Id. ¶

13  104; see id. ¶ 1 (alleging home inflation scheme); id. ¶ 14 (alleging Ponzi scheme).

14         Significantly, these are not merely passing allegations; they are necessary to

15  counter an obvious flaw in Plaintiffs' alleged scheme:  that the inflation of appraisals

16  makes no economic sense.  That is, inflated appraisals lead to under-secured loans, which

17  translate into losses for the lender in the event of foreclosure.  In order for the alleged

18  scheme to make any modicum of sense, Plaintiffs are forced to contend that the risk

19  associated with the (knowingly) under-secured loans was somehow transferred to third

20  parties (i.e., purchasers on the secondary securities market).

21         The facts alleged here are strikingly similar to those in Sell, where Judge Bolton

22  dismissed RICO claims against defendants who operated a group of mortgage lending

23  companies.  2006 WL 322469, at *1.  There, the defendants allegedly solicited money

24  from investors by telling them that the real estate loans would be issued only to qualified

25  borrowers and would be adequately secured, when in fact the loans were high-risk and

26  under-secured.  Id. at *2.  The defendants also allegedly operated a Ponzi scheme, in

27  which older investors were paid with money from newer investors.  Id. at *10.  Here, too,

28  the heart of the complaint is that Countrywide's loans were greater than their underlying

1    security, and the investors who purchased those loans on the secondary market were

2    unaware of their actual value.  FAC ¶ 104; see ITI Internet Servs., Inc. v. Solana Capital

3    Partners, Inc., No. C05-2010Z, 2006 WL 1789029, at *8 (W.D. Wash. Jun. 27, 2006)

4    (false statements issued to inflate stock value could have been pled as securities fraud

5    claim and therefore were not cognizable under RICO).  Plaintiffs also repeatedly make

6    the inflammatory accusation that Defendants operated a "Madoff-like" Ponzi scheme

7    without the factual allegations necessary to support this characterization.  FAC ¶¶ 14, 95,

8    & 97.

9        Investors in these secondary securities can challenge – and have challenged –the

10   same appraisal inflation practices alleged here.  See FAC ¶ 48 (describing securities

11   derivative action against Countrywide); In re Countrywide Finan. Corp. Derivative Litig.,

12   554 F. Supp. 2d 1044, 1058 (C.D. Cal. 2008) (describing allegation that home owners

13   were given "knowingly inflated home appraisal values"); Rosenbaum Capital, LLC v.

14   Kennedy, 09-537-JVS-RNB (C.D. Cal., filed May 5, 2009) (securities derivative action

15   against First American Corp. for alleged inflation practices).  The relief sought here is

16   therefore duplicative of that sought by plaintiffs in other pending (and earlier filed)

17   actions.

18       Plaintiffs cannot avoid the PSLRA bar by arguing that they lack standing to bring

19   a securities fraud action.  See Howard v. Am. Online, Inc., 208 F.3d 741, 749 (9th Cir.

20   2000) (affirming dismissal of RICO claims where "securities fraud claims could have

21   been brought by a plaintiff with proper standing"), cert. denied, 531 U.S. 828 (2000).

22   Because the alleged "end investors" in the secondary market could have potentially

23   brought a claim for securities fraud, the PSLRA bar applies.  Id.  Of course, Plaintiffs'

24   counsel did not bring a PSLRA claim here for two reasons:  (1) Plaintiffs in fact lack

25   standing to bring a securities fraud action, because they did not purchase securities, and

26   (2) a securities fraud action would be time-barred at this point.  See 28 U.S.C. § 1358

27   (securities fraud claims must generally be brought within two years); cf. FAC ¶¶ 139

28   (2005 Nieto contract), 142 (2005 Lewis contract), & 146 (Patron 2005 contract).  Under

the PSLRA, however, these tactical choices cannot legitimize use of the RICO statute.[4]

3.   Plaintiffs Also Fail To Plead a Pattern of Racketeering Activity With The Requisite Particularity

Even if Plaintiffs could overcome the substantial barriers presented by RESPA and the PSLRA, their RICO claim must nevertheless be dismissed.  Given the quasi-criminal nature of a civil RICO suit and its stigmatizing effect on the named defendants, courts must "strive to flush out frivolous RICO allegations at an early stage of the litigation." Wagh v. Metris Direct, Inc., 348 F.3d 1102, 1108 (9th Cir. 2003) (internal quotation marks omitted), *overruled on other grounds by* Odom v. Microsoft Corp., 486 F.3d 541, 551 (2007).

Here, Plaintiffs have failed to distinguish among the acts of the seven different named defendants.  "Rule 9(b) does not allow a complaint merely to lump multiple defendants together but require[s] plaintiffs to differentiate their allegations . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  Swartz, 476 F.3d at 764-65 (9th Cir. 2007) (internal quotation marks and citation omitted); Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud").  For example, Plaintiffs lump multiple parties together as "Defendants" or refer to them by the generalized and inflammatory shorthand "KB-Countrywide Criminal Enterprise," thereby providing inadequate notice of the allegations against each defendant.  See, e.g., FAC ¶ 1 ("KB-Countrywide Criminal Enterprise"); id. ¶ 159 (alleging that "Defendants concealed that they were using . . . inflated appraisals"); id. ¶ 200 (alleging that "Defendants" used interstate mail and wire facilities to send documents "from California, Texas, and potentially other states" to

---

[4] Plaintiffs allege two separate counts of RICO violations, one under 18 U.S.C. § 1962(c), which prohibits participation in a pattern of racketeering activity by an enterprise, and another under 18 U.S.C. § 1962(d), which prohibits a conspiracy to do the same. Because Plaintiffs' count under Subsection 1962(d) is predicated upon a violation of Subsection 1962(c), a dismissal of the latter warrants a dismissal of the former.  FAC ¶ 210 (alleging conspiracy under § 1962(d) based on conduct alleged under § 1962(c)); Howard, 208 F.3d at 751 ("the failure to adequately plead a substantive violation of RICO precludes a claim for conspiracy").

1    Arizona).

2        The few meager factual allegations that apply specifically to KB Home have also

3    not been pled with particularity and are likewise insufficient to support a claim.  See Vess

4    v. Ciba-Geigy Corp., 317 F.3d 1097, 1104 (9th Cir. 2003) ("Fraud allegations may

5    damage a defendant's reputation regardless of the cause of action in which they appear,

6    and they are therefore properly subject to Rule 9(b) in every case.").  Plaintiffs must

7    plead with particularity "the who, what, when, where, and how" of the purported

8    misconduct.  Id. at 1106 (internal quotation marks omitted).  Although Plaintiffs insist

9    that Defendants' alleged racketeering "likely involved thousands of separate instances of

10   use of the U.S. mails or interstate wire facilities," FAC ¶ 203, they in fact can point to

11   only three such mailings, none of which were even sent by KB Home.  Id. ¶ 200.

12       Tellingly, in their complaint of more than 230 paragraphs and 55 pages, Plaintiffs

13   specifically allege only two things against KB Home:  (1) it referred homebuyers to

14   Countrywide for financing, id. ¶ 3, and (2) it shared pending home sale information with

15   appraisers, id. ¶ 95.  Apart from the fact that neither of these acts is inherently unlawful,

16   Plaintiffs omit critical and elementary factual allegations such as who referred them to

17   Countrywide, what was said, to whom they were referred, when they were referred, or

18   how the referral was made.  Likewise, Plaintiffs never allege who provided the pending

19   home sale information, to whom it was provided, when it was provided, or how it was

20   communicated.  At bottom, the complaint makes only conclusory allegations regarding

21   KB Home's role as a peripheral bystander in a scheme allegedly driven by individual

22   appraisers.[5]  Equally fatal for Plaintiffs is their concession that these defects cannot be

23   cured by amendment.  See, e.g., FAC ¶ 196 (alleging that factual details of predicate acts

24   "have been hidden and cannot be alleged" at present).

25       Plaintiffs' counsel also allege that an anonymous letter arrived in their mailbox

26

27   _____

     [5] In anticipation of these glaring pleading deficiencies as to KB Home, Plaintiffs have
     also pled an "alternative" enterprise involving only the Countrywide and Landsafe
28   defendants.  FAC ¶¶ 186-192.

1   purporting to implicate KB Home in the alleged scheme.  Id. ¶¶ 91-92 (alleging meeting

2   between President and CEO of KB Home, former Senior Vice President of Countrywide,

3   and KB Home division presidents to explain appraisal procedure).  In order for

4   confidential witness statements to support a claim of fraud at the pleading stage, they

5   must, at a minimum, possess "sufficient particularity to establish [the witness'] reliability

6   and personal knowledge."[6]  Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 995

7   (9th Cir. 2009) (describing standard in securities fraud cases).  But the four-sentence

8   letter fails to disclose any basis for the author's knowledge, let alone the author's motive.

9   Of note is the author's recommendation that Plaintiffs' counsel contact KB Home

10  employees whose schedules had been reduced, as they would be most inclined to make

11  critical remarks about the company.[7]  FAC ¶ 91 ("Concentrate on the division presidents

12  who were recently furloughed.").  The allegations regarding the letter therefore fail to

13  provide support for any of Plaintiffs' claims and should be stricken.  Fed. R. Civ. P. 12(f)

14  (permitting the Court to strike any "scandalous matter").

### B.   The California UCL Is Inapplicable To This Arizona Action

#### 1.   The California Unfair Competition Law Does Not Apply Extraterritorially

18      Plaintiffs' invocation of the California Unfair Competition Law ("UCL"), which

19  prohibits any "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof.

20  Code § 17200, fares no better than their attempted use of the RICO statute.  The

21  California UCL is not a federal, nationwide, unfair competition law.  Accordingly, non-

22  residents of California cannot recover under the California UCL "for injuries . . . caused

---

[6] Indeed, the witness here is not even "confidential" – his or her identity is unknown even to Plaintiffs' counsel.  Accordingly, neither party is able to contact or question the mystery author, who may simply be a disgruntled former employee of any of the seven named defendants willing to fabricate accusations against his or her former employer.

[7] Plaintiffs similarly point to a suit brought by a terminated employee against Countrywide Financial Corp., which does not support Plaintiffs' claims.  See FAC ¶¶ 103-110.  A plaintiff must state a claim for relief in his or her own right, rather than attempting to piggyback off the conclusory allegations of another litigant.  See id. ¶¶ 111-123 (citing lawsuits filed by individual homeowners in California).

1   by conduct occurring outside of California's borders."  Norwest Mortgage, Inc. v.

2   Superior Court, 72 Cal. App. 4th 214, 224 (1999).  "The presumption against

3   extraterritoriality is one against an intent to encompass conduct occurring in a foreign

4   jurisdiction in the prohibitions and remedies of a domestic statute."  Diamond

5   Multimedia Sys., Inc. v. Superior Court, 19 Cal. 4th 1036, 1060 n.20 (1999) (emphasis

6   omitted).  The purpose of the California UCL in particular is "to protect *California*

7   businesses and consumers from unlawful, unfair, and fraudulent business practices."

8   Proposition 64, § (1)(a) (emphasis added); see also Churchill Village, LLC v. Gen. Elec.

9   Co., 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) (noting that the UCL "does not support

10   claims by non-California residents where none of the averred misconduct or injuries

11   occurred in California"), *aff'd*, 361 F.3d 566 (9th Cir. 2004).

12          As the complaint tersely states:  "The Scheme was Carried out in Arizona and

13   Injured the Plaintiffs in Arizona."  FAC, Heading IV-J.  That also makes sense:  the

14   allegedly inflated appraisals necessarily occurred in the state where the homes were

15   located and appraised, and Plaintiffs focus exclusively on homes built in Arizona and

16   Nevada.  Id. ¶ 15.  Despite these allegations, Plaintiffs argue that California law should

17   apply on the basis of passing allegations that the "actions" and "decisions" of Defendants

18   "emanated from and occurred within" California – allegations that are plainly insufficient

19   to satisfy the heightened pleading standard for claims grounded in fraud.  See, e.g.,

20   Meinhold v. Spring Spectrum, L.P., No. CVS-07-00456 FCD EFB, 2007 WL 1456141, at

21   *5-6 (E.D. Cal. May 16, 2007) (noting that California UCL claims grounded in fraud

22   must be pled with particularity); see also Ashcroft v. Iqbal, -- U.S. --, 129 S. Ct. 1937,

23   1949 (2009) ("The plausibility standard . . . asks for more than a sheer possibility that a

24   defendant has acted unlawfully.").

25          These pleading deficiencies are particularly pronounced as to KB Home.

26   Plaintiffs never allege a particular instance of mail or wire fraud involving KB Home –

27   let alone an instance in which KB Home directed such fraud from California to Arizona

28   or Nevada.  Cf. FAC ¶ 200.  At best is the mere allegation that KB Home has its

1   headquarters and principal place of business in California.  Id. ¶ 25.  No authority

2   supports the proposition that any company with its headquarters in California thereby

3   subjects itself to application of the California UCL across the entire fifty states (and

4   beyond), especially as to vaguely alleged conduct that (at most) occurred outside the

5   state.

6           2.      Even Assuming The Applicability of The California UCL, Plaintiffs
7                   Have Failed To Plead a Cognizable Claim

8           As noted above, the allegations in the complaint fall squarely within RESPA's

9   safe harbor, which permits payment for services actually performed.  12 U.S.C.

10  § 2607(c); Cendeno, 2006 WL 3992304, at *4.  While this safe harbor effectively

11  forecloses any claim under RESPA, it also forecloses Plaintiffs' attempt to repackage this

12  claim as "unfair" conduct under the California UCL.  As the California Supreme Court

13  itself has declared, "[c]ourts may not simply impose their own notions of the day as to

14  what is fair or unfair. . . . When specific legislation provides a 'safe harbor,' plaintiffs may

15  not use the general unfair competition law to assault that harbor." Cel-Tech Commc'ns,

16  Inc. v. Los Angeles Cellular Telephone Co., 20 Cal. 4th 163, 182 (1999).

17          In accord with this rule, courts have routinely dismissed California UCL claims in

18  a wide variety of settings based on the presence of a safe harbor.  See, e.g., Rubio v.

19  Capitol One Bank (USA), N.A., 572 F. Supp. 2d 1157, 1168 (C.D. Cal. 2008) (bank

20  complied with Truth in Lending Act for APR increases); Augustine v. FIA Card Servs.,

21  N.A., 485 F. Supp. 2d 1172, 1176 (E.D. Cal. 2007) (Office of Comptroller of Currency

22  regulation permitted banks to extend loans without regard to state limitations concerning

23  disclosure and advertising in credit-related documents); Byars v. SCME Mortgage

24  Bankers, Inc., 109 Cal. App. 4th 1134, 1141-42, 1147-49 (2003) (disclosure of yield

25  spread premium complied with HUD requirements).

26          Here, as well, Plaintiffs cannot assault RESPA's safe harbor by merely repleading

27  the claim as "unfair" conduct under the California UCL.  On the (alleged) facts,

28  Plaintiffs' claim of "unlawful" conduct under the California UCL is largely derivative of

1    other claims in the action (e.g., Plaintiffs' RICO claim) and fails for the reasons specific

2    to each of them.

3         The only allegations of unlawful conduct unique to the "unlawful" prong of the

4    California UCL claim arise from an Arizona statute that prohibits improperly influencing

5    an appraisal, A.R.S. § 32-3633, and the Uniform Standards of Professional Appraisal

6    Practice ("USPAP").  FAC ¶ 218.  As to the Arizona statute, Plaintiffs may not borrow

7    from other states' laws to inform what constitutes "unlawful" conduct under the

8    *California* UCL, which could not possibly harmonize the conflicting laws of fifty

9    different jurisdictions.  See Norwest, 72 Cal. App. 4th at 222 ("the statutes of this state

10   [do not] have force or operation beyond the boundaries of the state").  As to USPAP,

11   these standards apply only to "federally related transactions," 12 C.F.R. § 34.44, which

12   are defined as real estate transactions engaged in by institutions regulated by the Office of

13   Comptroller Currency, 12 C.F.R. § 34.42.  Even assuming the applicability of those

14   standards here, any state law purporting to rely on USPAP would be preempted.  See

15   Spears, 2009 WL 605835, at *5-6 (dismissing California UCL claim based on USPAP

16   because of preemption).  For all these reasons, even assuming that the California UCL

17   were applicable to this action, Plaintiffs' claim must nevertheless be dismissed.

18        **C.    Plaintiffs Fail To State a Claim for Unjust Enrichment**

19        A claim for unjust enrichment fails where, as here, an express contract is at issue.

20   A plaintiff "cannot recover on . . . claims of unjust enrichment and breach of implied

21   contract, [where plaintiffs] relationship with [defendant] was governed by a valid express

22   contract."  Sutter Home Winery, Inc. v. Vintage Selections, Inc., 971 F.2d 401, 408 (9th

23   Cir. 1992) (citing Arizona law); accord Crockett & Myers, Ltd. v. Napier, Fitzgerald &

24   Kirby, LLP, 440 F. Supp. 2d 1184, 1197 (D. Nev. 2006).  "Unjust enrichment is an

25   equitable rather than a legal claim; consequently, no action for unjust enrichment lies

26   where a contract governs the parties' relationship to each other."  See McKesson Inc. v.

27   New York State Common Retirement Fund, 339 F.3d 1087, 1091 (9th Cir. 2003); accord

28   Crockett, 440 F. Supp. 2d at 1197 ("Where a plaintiff can maintain an action at law and

1   the legal remedy is adequate, resort to equity is not appropriate.").

2       Here, Plaintiffs concede that they entered into valid, binding contracts with KB

3   Home and Countrywide.  See, e.g., FAC ¶ 128 ("Plaintiff contracted for a KB Home");

4   id. ¶ 200 (describing "loan documents").  Plaintiffs have undoubtedly received the benefit

5   for which they contracted; that is, their homes and the loans that allowed them to

6   purchase those homes.  Plaintiffs also have an adequate remedy at law under RESPA.

7   See Sulta v. O'Brien, 488 P.2d 1021, 1025 (Ariz. Ct. App. 1971) (noting that an equitable

8   remedy is unavailable "whenever the rights of the parties are clearly defined and

9   established by statutory provisions"); accord Suzico, Inc. v. Maricopa County, 928 P.2d

10  693, 696 (Ariz. Ct. App. 1996) (rejecting claim for unjust enrichment where it would

11  render statute superfluous).  This is true despite the fact that any claim under RESPA is

12  now time-barred and that Defendants would qualify for protection under the safe harbor

13  provision; these considerations merely reflect Congress' intent that no liability should

14  attach under the circumstances alleged.

## IV.   CONCLUSION

16      For the foregoing reasons, KB Home respectfully requests that this Court grant its

17  motion to dismiss without leave to amend.


19  DATED: August 20, 2009            MUNGER, TOLLES & OLSON LLP
                                        BRAD D. BRIAN
20                                      BRUCE A. ABBOTT
                                        HAILYN J. CHEN
21                                      PETER C. RENN

22                                    SNELL & WILMER LLP
                                        PATRICIA L. REFO
23

24                                    By:   /s/ Bruce A. Abbott

25                                        Attorneys for Defendant
                                          KB HOME
26

1

## CERTIFICATE OF SERVICE

2     I hereby certify that on August 20, 2009, I electronically transmitted the foregoing

3   to the Clerk's Office using the CM/ECF System for filing to the following CM/ECF

4   participants:

5
Steve W. Berman
Thomas Loeser
6
Genessa A. Stout
Hagens Berman Sobol Shapiro LLP
7
1301 5th Ave., Suite 2900
Seattle, WA 98101
8

Jonathan Grant Brinson
9
Robert W. Shely
William Thomas Luzader, III
10
Bryan Cave LLP
2 North Central Ave., Suite 2200
11
Phoenix, AZ 85004-4406

12
Robert B. Carey
Donald Andrew St. John
13
Hagens Berman Sobol Shapiro PLLC
2425 East Camelback Rd., Suite 650
14
Phoenix, AZ 85016

15

16
/s/ Bruce A. Abbott
Bruce A. Abbott
17

18

19

20

21

22

23

24

25

26

27

28