**HAGENS BERMAN SOBOL SHAPIRO LLP**
Robert B. Carey #011186
Donald Andrew St. John #024556
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003
Telephone: (602) 840-5900
Facsimile: (602) 840-3012
E-Mail: andy@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman WSBA #12536
Thomas E. Loeser WSBA #38701
Genessa Stout WSBA #38410
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-Mail: steve@hbsslaw.com
       toml@hbsslaw.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| NATHANIEL JOHNSON and KRISTEN PETRILLI, ABRAHAM NIETO; GLORIA and CHARLES LEWIS; FABIAN and MARIE PATRON, on behalf of themselves and all others similarly situated,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>KB HOME, a Delaware corporation; COUNTRYWIDE FINANCIAL CORPORATION, a Delaware corporation; COUNTRYWIDE HOME LOANS, INC., a New York corporation; COUNTRYWIDE MORTGAGE VENTURES, LLC, a Delaware company; COUNTRYWIDE-KB HOME LOANS, an unincorporated association of unknown form, LANDSAFE, INC., a Delaware corporation; LANDSAFE APPRAISAL SERVICES, INC., a California corporation; and DOES 1 through 1000,<br><br>                    Defendants. | No. CV-09-972-PHX-FJM<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   STATEMENT OF FACTS ................................................................................... 2

III.  ARGUMENT ...................................................................................................... 4

    A.    The Court Determines Whether Rule 23's Requirements Are Met Without Assessing The Merits of Plaintiffs' Case ........................................ 4

    B.    Rule 23(a)'s Requirements Are Satisfied ..................................................... 5

        1.    The Class is so numerous that joinder is impracticable ................... 5

        2.    This case involves common questions of law and fact ..................... 6

        3.    The representative parties' claims are typical of the Class claims ................................................................................................ 7

        4.    Plaintiffs will fairly and adequately protect the Class's interests ...... 8

    C.    The Proposed Class Satisfies All of the Requirements of Rule 23(b)(3) ...... 9

        1.    Common questions of law and fact predominate .............................. 9

            a.    The RICO claim presents common issues ........................... 10

            b.    The state-law claims present common issues ...................... 11

            c.    A common methodology will determine Class members' damages .............................................................. 11

        2.    A class action is superior to other available methods for the fair and efficient adjudication of this action ................................... 14

IV.   CONCLUSION ................................................................................................. 17

# TABLE OF AUTHORITIES

## CASES

**Page**

*In re Abbott Labs. Norvir Anti-Trust Litig.*,
2007 U.S. Dist. LEXIS 44459 (N.D. Cal. June 11, 2007) ...................................... 11

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ...................................................................... 10

*Armstrong v. Davis*,
275 F.3d 849 (9th Cir. 2001) ............................................................. 6

*Ballard v. Equifax Check Servs.*,
186 F.R.D. 589 (E.D. Cal. 1999) ........................................................ 16

*Bank of the West v. Superior Ct.*,
833 P.2d 545 (Cal. 1992) ............................................................... 16

*Bates v. UPS*,
204 F.R.D. 440 (N.D. Cal. 2001) ......................................................... 5

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ................................................... 4, 5, 10, 11

*Brewer v. Salyer*,
2009 U.S. Dist. LEXIS 41627 (E.D. Cal. May 15, 2009) ..................................... 10

*Bridge v. Phoenix Bond & Indem. Co.*,
128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008) .............................................. 10

*Chamberlan v. Ford Motor Co.*,
402 F.3d 952 (9th Cir. 2005) ............................................................. 5

*City of New York v. Smokes-Spirits.com, Inc.*,
541 F.3d 425 (2d Cir. 2008) ............................................................. 10

*Corbett v. Superior Ct.*,
101 Cal. App. 4th 649 (2002) ........................................................... 16

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ..................................................................... 5

*Ellis v. Costco Wholesale Corp.*,
240 F.R.D. 627 (N.D. Cal. 2007) ......................................................... 6

*Epstein v. MCA, Inc.*,
50 F.3d 644 (9th Cir. 1995), *rev'd on other grounds*, 516 U.S. 367 (1996) .......... 17

*Freeland v. AT&T Corp.*,
238 F.R.D. 130 (S.D.N.Y. 2006) .......................................................... 13

010120-12  347101 V1

*General Tel. Co. of the Southwest v. Falcon*,
  457 U.S. 147 (1982) ................................................................................................. 5

*Gunnells v. Healthplan Servs., Inc.*,
  348 F.3d 417 (4th Cir. 2003) ................................................................................ 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................. 1, 6, 7, 9, 15

*Hanon v. Dataproducts Corp.*,
  976 F.2d 497 (9th Cir. 1992) ................................................................................... 7

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) ................................................................................. 15

*Heffelfinger v. Elec. Data Sys. Corp.*,
  2008 U.S. Dist. LEXIS 5296 (C.D. Cal. Jan. 7, 2008) ........................................... 5

*In re Katrina Canal Breaches Consol. Litig.*,
  2007 U.S. Dist. LEXIS 82887 (E.D. La. Nov. 1, 2007) .................................... 13, 14

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) ................................................................ 4, 5, 7, 8, 9

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ............................................................................. 9, 17

*Mass Mut. Life Ins. Co. v. Superior Ct.*,
  97 Cal. App. 4th at 1294 ...................................................................................... 16

*Mazza v. Am. Honda Motor Co.*,
  254 F.R.D. 610 (C.D. Cal. 2008) ............................................................................ 6

*McPhail v. First Com mand Fin. Planning, Inc.*,
  247 F.R.D. 598 (S.D. Cal. 2007) ....................................................................... 7, 17

*Moeller v. Taco Bell Corp.*,
  220 F.R.D. 604 (N.D. Cal. 2004) ........................................................................ 5, 6

*In re NCAA I-A Walk-On Football Players Litig.*,
  2006 U.S. Dist. LEXIS 28824 (W.D. Wash. May 3, 2006) ...................................... 5

*O'Connor v. Boeing North Am., Inc.*,
  184 F.R.D. 311 (C.D. Cal. 1998) .......................................................................... 14

*Perez-Olano v. Gonzalez*,
  248 F.R.D. 248 (C.D. Cal. 2008) ............................................................................ 5

*Perez v. First Am. Title Ins. Co.*,
  2009 U.S. Dist. LEXIS 75353 (D. Ariz. Aug. 12, 2009) ....................................... 16

010120-12  347101 V1

*Robinson v. Fountainhead Title Group Corp.*,
    257 F.R.D. 92 (D. Md. 2009) ................................................................ 7, 10

*Sav-On Drug Stores, Inc. v. Superior Ct.*,
    96 P.3d 194 (Cal. 2004)................................................................... 11, 16

*Schaefer v. Overland Express Family of Funds*,
    169 F.R.D. 124 (S.D. Cal. 1996) ................................................................ 8

*Schwab v. Philip Morris USA, Inc.*,
    449 F. Supp. 2d 992, 1106 (E.D.N.Y. 2006), *rev'd on other grounds*,
    522 F.3d 215 (2d Cir. 2008) ................................................................ 9, 10

*Shaffer v. Continental Cas. Co.*,
    2007 U.S. Dist. LEXIS 96189 (C.D. Cal. Jan. 26, 2007)........................................ 6

*Sher v. Raytheon Co.*,
    2009 U.S. Dist. LEXIS 93127 (M.D. Fla. Sept. 30, 2009) .................................... 14

*Smith v. Univ. of Wash. Law Sch.*,
    2 F. Supp. 2d 1324 (W.D. Wash. 1998) ................................................................ 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)................................................................... 4, 5

*Steinberg v. Nationwide Mut. Ins. Co.*,
    224 F.R.D. 67 (E.D.N.Y. 2004) ................................................................ 16

*In re Synthroid Mktg. Litig.*,
    188 F.R.D. 295 (N.D. Ill. 1999) ................................................................ 10

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*,
    209 F.R.D. 159 (C.D. Cal. 2002) ................................................................ 15

*Thomas v. Baca*,
    231 F.R.D. 397 (C.D. Cal. 2005) ................................................................ 5

*Tsirekidze v. Syntax-Brillian Corp.*,
    2009 U.S. Dist. LEXIS 61145 (D. Ariz. July 17, 2009) ........................................ 5

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996)................................................................... 15

*In re Visa Check/MasterMoney Antitrust Litig.*,
    280 F.3d 124 (2d Cir. 2001) ................................................................ 10

*Wiegele v. FedEx Ground Package Sys.*,
    2008 U.S. Dist. LEXIS 10246 (S.D. Cal. Feb. 12, 2008) .................................... 17

*Williams v. Mohawk Indus.*,
    568 F.3d 1350 (11th Cir. 2009)................................................................... 6, 7, 16

010120-12 347101 V1

*Winkler v. DTE, Inc.*,
    205 F.R.D. 235 (D. Ariz. 2001) ............................................................. 10

*Yokoyama v. Midland Nat'l Life Ins. Co.*,
    __ F.3d __, 2009 U.S. App. LEXIS 19357 (9th Cir. Haw. Aug. 28, 2009).......... 11

*In re Zyprexa Prods. Liab. Litig.*,
    253 F.R.D. 69 (E.D.N.Y. 2008) ............................................................. 14

## STATUTES

Cal. Bus. & Prof. Code §§ 17200 *et seq.*.................................................. 11, 16

010120-12  347101 V1

1    Plaintiffs hereby move this Court to certify a class pursuant to Fed. R. Civ. P. 23.

2   In support, Plaintiffs submit the following memorandum of points and authorities.

3                          **I.      INTRODUCTION**

4        In their First Amended Complaint ("FAC"), Plaintiffs set forth Defendants'

5   scheme[1] to rig residential-property appraisals in order to artificially inflate the price of

6   KB Home properties financed by Countrywide Financial Corp. and its subsidiaries.  By

7   illegally manipulating appraisals, Defendants uniformly inflated the prices putative Class

8   members paid for their KB Home properties.

9        A class is appropriate because Defendants' conduct has common elements that

10  unify Class members, namely whether Defendants:  (i) created a scheme to inflate

11  appraisals; (ii) obtained inflated appraisals to support each Class member's purchase; and

12  (iii) implemented the Scheme to inflate each Class member's purchase price.  Resolving

13  these elements from which class-wide liability and damages can be determined is

14  superior to any alternative and will result in substantial justice.

15       The requirements of Fed. R. Civ. P. 23(a) are satisfied here.  The documentary and

16  testimonial evidence applying to each Plaintiff applies across the Class.  Virtually all

17  elements of Plaintiffs and the Class' claims use the same proof of uniform conduct,

18  including:  (i) the role of each Defendant in creating and implementing the Scheme, and

19  (ii) Plaintiffs and Class members' inflated purchase prices supported by tainted

20  appraisals.  These circumstances satisfy Rule 23(a)'s requirements of numerosity,

21  common issues and the typicality of Plaintiff and Class claims.

22       Rule 23(b)(3) is also satisfied because common questions present a significant

23  aspect of the case and can be resolved for all Class members in a single adjudication.  *See*

24  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).  The issues surrounding

25  Defendants' inflated appraisal scheme are central to every Class member's claim.  Injury

26  and damages will be shown by evidence applicable to the Class.  Plaintiffs have submit-

27

28  _____
    [1] "Defendants" refers to KB Home, and the named Countrywide Financial
    subsidiaries, including Landsafe, Inc., and Landsafe Appraisal Services, Inc.

- 1 -

ted the Declaration of Bryce Ward in support of their motion.  Dr. Ward explains that class-wide data is available to demonstrate that Defendants' unlawful scheme injured all Class members.  Injury can be calculated and proven on a class-wide basis with standard methodologies deployed to calculate damages to the Class.  Common issues also predominate for the state-law claims, which do not present manageability problems.

## II.    STATEMENT OF FACTS[2]

Defendants KB Home, Countrywide and LandSafe, along with their network of staff and fee appraisers, formed and operated a criminal enterprise (the "KB-Countrywide Criminal Enterprise"), which, through the "Inflated Appraisal Scheme" inflated the sale amounts of KB Home properties and loan amounts of Countrywide loans.  The Scheme corrupted appraisals of KB Home properties such that they would always indicate a value at or above the contracted sales price for the properties or were otherwise inflated.  ¶ 1.[3]

KB Home is among the nation's largest home builders and has built tens of thousands of homes throughout the United States and in Arizona.  KB Home is in a position to refer and direct its customers to purchase thousands of dollars in settlement services – such as mortgage services, title insurance, escrow, and the like – from providers of KB's choice.  Countrywide is one of the largest home lenders in the country, at one time originating over one in four of all home-mortgages in the United States.  These two entities formed a joint venture, "Countrywide-KB," to control the purchase and lending process and capture every settlement service fee for KB Home sales.  ¶¶ 2-5.

LandSafe procures and provides appraisals and is a Countrywide subsidiary.  The three entities – KB Home, Countrywide, and LandSafe, operated the KB-Countrywide Criminal Enterprise among themselves and through the Countrywide-KB joint venture.

---

[2] Plaintiffs bring this motion absent any significant document discovery.  Plaintiffs propounded discovery immediately following the case management conference, but were met with stonewall responses.  After extensive meetings and vigorous pursuit, such efforts are only now beginning to bear fruit.  Days before this Motion was due, KB Home delivered its first batch of documents.  Countrywide/LandSafe have yet to produce ESI.  Plaintiffs expect that their reply memorandum will reference documents from discovery.

[3] "¶ ___" refers to paragraphs of the First Amended Class Action Complaint (Dkt. No. 32), unless otherwise noted.

The KB-Countrywide Criminal Enterprise built, financed, appraised and controlled virtually every aspect of a buyer's transaction and thus Defendants were in a position to rig and inflate the appraised value of the homes they sold and financed.  ¶¶ 6-7.

An appraisal is a critical part of the home-buying and financing process.  No honest lender will fund a loan where the home is not adequate collateral for the loan.  If an appraisal is inflated a homeowner may purchase a house for more than its worth and the results can lead to an inability to refinance and foreclosure, in addition to excessive mortgage payments and taxes.  Through the Inflated Appraisal Scheme, the KB-Country-wide Criminal Enterprise controlled the appraisals for KB Home developments.  When a customer wanted to purchase a house from KB Home, he/she was typically required and/or steered to complete an application from Countrywide (which purported to act as a loan broker for Countrywide-KB).  Countrywide would order an appraisal for the property from LandSafe.  KB Home orders were routed to a single person at LandSafe, who assigned the appraisals to a small group of appraisers who had been specifically approved for each development by KB Home due to their willingness to "play-ball," *i.e.*, come in with the appraisal at whatever number was necessary to close the deal.  ¶¶ 8-9.

The KB-Countrywide Criminal Enterprise thus steered Plaintiffs and Class members to its complicit appraisers who were under direct instruction to value homes at or above the contract price, even if it meant completing appraisals that violated regulatory guidelines and requirements.  This ensured that Plaintiffs' and Class members' trans-actions occurred at inflated contracted prices, notwithstanding the actual and sometimes declining home market between the date of a contract and settlement.  ¶ 10.

Plaintiffs' and Class members' home appraisals were tainted with false and misleading data, deceptive practices, and violations of the Regulatory standards for professional appraisers including, *inter alia*, the following:

    i.    *Improper selection of distant, dissimilar properties*:  The tainted appraisals claimed distant dissimilar properties were comparable sales, overlooking numerous available neighboring, identical comparable sales that would have revealed lower value;

ii.   *Use of pending transactions as comparable sales*:  The tainted appraisals used claimed pending sales, even when no sale was actually pending because the ostensible buyer had abandoned the transaction; and

iii.  *False and misleading statements regarding market factors and conditions*:  The tainted appraisals gave false and misleading statements concerning the generally downward trending real estate market at the time that the appraisals were performed.  ¶ 11.

The appraisal reports often stated that they relied on information from KB Home and Countrywide-KB.  The appraisers' use of such unverified information and patently faulty methodology demonstrates their complicity in the Scheme.  When a prospective KB Home purchaser had a non-complicit appraiser look at public records of recently closed sales of truly comparable properties, the independent appraisals revealed values far below the KB Home contract price and the Enterprise-tainted appraisal.  ¶¶ 12-13.

The inflated sale prices resulting from the tainted appraisals, in turn, infected subsequent appraisals and valuations, allowing the KB-Countrywide Criminal Enterprise to continue to obfuscate falling values.  In other words, this was a Madoff-like Ponzi scheme that depended upon the initial use of false appraisals to prop up early sales in a KB Home subdivision, which tainted sales were then used to continue to artificially prop up the value and selling prices of entire KB Home subdivisions.  ¶ 14.

The impact of this Scheme is staggering.  In Arizona and Nevada, KB Home built over 14,000 homes since 2006, at an average price of about $260,000.  Conservatively assuming an average inflated appraisal of $20,000 per home would amount to $280 million in inflated prices.  The average inflation of properties in counsel's investigation is $82,169.  Damages from inflated appraisals may thus exceed $280 million.  ¶ 15.

### III.   ARGUMENT

**A.   The Court Determines Whether Rule 23's Requirements Are Met Without Assessing The Merits Of Plaintiffs' Case**

A court does not assess the likelihood of success on the merits in resolving a class-certification motion.  *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003); *Blackie v. Barrack*, 524 F.2d 891, 901 n.17 (9th Cir. 1975); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009).  "[N]othing in either the language or history of Rule 23 …

gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action.  Indeed, such a procedure contravenes the Rule." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974). *See also Tsirekidze v. Syntax-Brillian Corp.*, 2009 U.S. Dist. LEXIS 61145, at *10 (D. Ariz. July 17, 2009).

The Court thus accepts the Complaint's well-pled allegations as true.  *Blackie*, 524 F.2d at 901 n.17.  With these factual allegations in mind, the Court should conduct a "rigorous analysis" of Fed. R. Civ. P. 23's prerequisites.  *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 962 (9th Cir. 2005).  If necessary, the Court may "probe behind the pleadings" to determine whether the Rule 23 requirements are met.  *Falcon*, 457 U.S. at 160; *see also Eisen*, 417 U.S. at 177-78; *Staton*, 327 F.3d at 954.  And the Court may "consider evidence relating to the merits if such evidence also goes to the requirements of Rule 23." *LDK Solar*, 255 F.R.D. at 525.  But the only issue on a class-certification motion is whether plaintiffs are asserting a claim that, assuming its merit, will satisfy Rule 23. *Eisen*, 417 U.S. at 178; *Bates v. UPS*, 204 F.R.D. 440, 443 (N.D. Cal. 2001).

**B.**     **Rule 23(a)'s Requirements Are Satisfied**

**1.**     **The Class is so numerous that joinder is impracticable**

Rule 23(a)'s first requirement is that the class be so numerous that joinder of all members would be "impracticable."  Fed. R. Civ. P. 23(a)(1); *LDK Solar*, 255 F.R.D. at 525.  Plaintiffs need not establish the precise number or identity of class members.  *See*, *e.g.*, *Perez-Olano v. Gonzalez*, 248 F.R.D. 248, 256 (C.D. Cal. 2008); *Thomas v. Baca*, 231 F.R.D. 397, 399 (C.D. Cal. 2005); *Moeller v. Taco Bell Corp.*, 220 F.R.D. 604, 608 (N.D. Cal. 2004).  Rather, a finding of numerosity may be supported by common-sense assumptions.  *Heffelfinger v. Elec. Data Sys. Corp.*, 2008 U.S. Dist. LEXIS 5296, at *55-56 (C.D. Cal. Jan. 7, 2008); *In re NCAA I-A Walk-On Football Players Litig.*, 2006 U.S. Dist. LEXIS 28824, at *16-17 (W.D. Wash. May 3, 2006); *Moeller*, 220 F.R.D. at 608.

Courts have never defined a minimum number needed to certify a class, but a class

010120-12  347101 V1

1    with more than 41 members is generally sufficiently numerous such that joinder is

2    considered impracticable.  *Ellis v. Costco Wholesale Corp.*, 240 F.R.D. 627, 637 (N.D.

3    Cal. 2007) (citing 5 James W. Moore *et al.*, MOORE'S FEDERAL PRACTICE § 23.22[1][b]

4    (3d ed. 2004)).  Classes numbering in the hundreds or thousands routinely satisfy the

5    numerosity requirement, *see, e.g.*, *Shaffer v. Continental Cas. Co.*, 2007 U.S. Dist.

6    LEXIS 96189, at *7 (C.D. Cal. Jan. 26, 2007), particularly when class members are

7    geographically dispersed, *see Moeller*, 220 F.R.D. at 608.

8            Numerosity is met here.  The Class includes thousands of people.  Indeed,

9    according to KB's 2008 SEC Form 10-K, KB Home built over 10,000 homes that were

10   financed by the Countrywide-KB joint venture during the Class Period.  ¶ 169.  The Class

11   thus consists of many thousand members or more, which is so numerous that joinder of

12   all members is impracticable, thereby satisfying Rule 23(a)'s numerosity requirement.

13           **2.       This case involves common questions of law and fact**

14           Rule 23(a) also requires that there be "questions of law or fact common to the

15   [members of the] class."  Fed. R. Civ. P. 23(a)(2).  Commonality under Rule 23(a)(2) is

16   liberally and permissively construed, *see Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019

17   (9th Cir. 1998), and presents "a low hurdle," *Williams v. Mohawk Indus.*, 568 F.3d 1350,

18   1356 (11th Cir. 2009).  A class satisfies the commonality requirement if the "plaintiffs'

19   grievances share a common question of law or of fact."  *Armstrong v. Davis*, 275 F.3d 849,

20   868 (9th Cir. 2001).  The commonality requirement is satisfied if the claims of the prospec-

21   tive class share even one central question of fact or law.  *See, e.g.*, *Hanlon*, 150 F.3d at

22   1019-20; *see also Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 618 (C.D. Cal. 2008)

23   ("[o]nly one significant issue of law or fact need be demonstrated to meet this require-

24   ment").  Commonality exists when there are underlying facts or legal theories common

25   throughout the class, even if the common facts support different legal theories or common

26   legal theories rest on different facts.  *See Hanlon*, 150 F.3d at 1019-20.  "Rule 23(a)(2)

27   does not require each member in a class to have identical factual and legal issues surround-

28   ing his or her claim.  'The existence of shared legal issues with divergent factual predicates

is sufficient' to meet the requirements of Rule 23(a)(2)." *LDK Solar*, 255 F.R.D. at 525 (quoting *Hanlon*, 150 F.3d at 1019).  Defendants' actions need not affect each class member in the same manner and individual differences in damages will not defeat class treatment.  *Smith v. Univ. of Wash. Law Sch.*, 2 F. Supp. 2d 1324, 1342 (W.D. Wash. 1998).

Commonality here is readily established.  This action is based on Defendants' Inflated Appraisal Scheme.  The FAC identifies nine common legal and factual issues in this action.  ¶ 170.  These are typical of issues routinely found to present "common questions" compelling certification of RICO class actions.  The same facts giving rise to Plaintiffs' claims also give rise to absent Class members' claims.  Class members would have to prove identical facts and answer identical questions if they pursued claims individually.  As Plaintiffs allege, underlying the common questions is a common nucleus of operative facts pertaining to Defendants' Inflated Appraisal Scheme.  Courts have consistently certified classes in RICO cases involving similar common questions.  See, for example, *Williams*, 568 F.3d at 1356-57; *Robinson v. Fountainhead Title Group Corp.*, 257 F.R.D. 92, 94 (D. Md. 2009); *id*. at 94-95 (citing cases).  Plaintiffs, therefore, have alleged facts showing that this action also satisfies Rule 23's commonality requirement.

**3.      The representative parties' claims are typical of the Class claims**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  As with commonality, typicality is liberally construed.  *Hanlon*, 150 F.3d at 1020.  Typicality's purpose is to assure that the named representative's interests align with the class's.  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).  "A plaintiff's claims are typical if they 'are reasonably co-extensive with those of absent class members; they need not be substantially identical.'"  *LDK Solar*, 255 F.R.D. at 532 (quoting *Hanlon*, 150 F.3d at 1020).

Applying these standards, courts generally find the typicality requirement to be satisfied if the claims arise from the same or similar injury, the action is based on conduct that is not unique to the named plaintiffs, and other class members have been injured by the same or similar course of conduct.  *Hanon*, 976 F.2d at 508; *McPhail v. First Com-*

1    *mand Fin. Planning, Inc.*, 247 F.R.D. 598, 609-10 (S.D. Cal. 2007).  Individual differ-

2    ences in the amount of damages sustained, the size or manner of purchase, the nature of

3    the purchase, and/or the date of purchase are insufficient to defeat class certification.  *See*

4    *Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 128-29 (S.D. Cal. 1996).

5            Here, the claims of all Class members arise from Defendants' Inflated Appraisal

6    Scheme, which injured the Class members in the same or similar manner by artificially

7    inflating the purchase price of KB Home properties.  Accordingly, Rule 23(a)(3)'s

8    typicality requirement is satisfied.

9            **4.      Plaintiffs will fairly and adequately protect the Class's interests**

10           Rule 23(a)(4) requires that "the representative parties will fairly and adequately

11   protect the interests of the class."  In assessing adequacy the Court must answer two

12   questions:  "(1) does the named plaintiff and their counsel have any conflicts of interest

13   with other class members and (2) will the named plaintiff and her counsel act vigorously

14   on behalf of the class?"  *LDK Solar*, 255 F.R.D. at 532 (citing *Lerwill v. Inflight Motion*

15   *Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

16           Both adequacy prongs are easily met here.  Plaintiffs' interests are fully aligned

17   with those of absent Class members because they bring the same claims for similar reme-

18   dies under the same legal theories.  There are no actual or potential conflicts of interest

19   between Plaintiffs and Class members.  Plaintiffs and Class members have been injured

20   in the same manner and seek identical forms of relief.  Plaintiffs understand and are pre-

21   pared to fulfill their duties to the Class.  Accordingly, the interests of the representative

22   Plaintiffs and the Class members in recovering their damages are well aligned.

23           Adequacy of counsel is assessed under Fed. R. Civ. P. 23(g).  A court that certifies

24   a class must appoint class counsel. Fed. R. Civ. P. 23(g)(1). Rule 23(g)(1)(A) provides

25   that the court "must consider:  (i) the work counsel has done in identifying or investigat-

26   ing potential claims in the action; (ii) Counsel's experience in handling class actions,

27   other complex litigation, and the types of claims asserted in the action; (iii) counsel's

28   knowledge of the applicable law; and (iv) the resources that counsel will commit to

010120-12 347101 V1

representing the Class.  "[The Adequacy of Counsel requirement] is satisfied where the class attorneys are experienced in the field or have demonstrated professional compe-tence in other ways, such as by the quality of the briefs and the arguments during the early stages of the case."  *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1106 (E.D.N.Y. 2006), *rev'd on other grounds*, 522 F.3d 215 (2d Cir. 2008).

Plaintiffs have retained highly capable counsel with extensive experience in prosecuting RICO class actions throughout the United States.  Plaintiffs' Counsel are capable of, and committed to, prosecuting this action vigorously on behalf of the Class.[4] Counsel has shown competency through the course to-date of this litigation.  Plaintiffs thus respectfully request appointment of Hagens Berman as Class Counsel.  The named Plaintiffs and their Counsel will fairly and adequately represent the Class's interests.

**C.     The Proposed Class Satisfies All of the Requirements of Rule 23(b)(3)**

A court may certify a class under Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Both criteria are met here.

**1.     Common questions of law and fact predominate**

When common questions present a significant aspect of the case and can be resolved for all members of the class in a single adjudication, handling the dispute on a representative rather than an individual basis is justified.  *Hanlon*, 150 F.3d at 1022; *LDK Solar*, 255 F.R.D. at 525-26.  This predominance-of-common-issues inquiry focuses on the relationship between the common and individual issues.  *Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001); *LDK Solar*, 255 F.R.D. at 525.  Predominance of common issues does not require, however, that there can be no individual issues or no difficulty in proof, *see Las Vegas Sands*, 244 F.3d at 1162, or common questions completely dispose of the litigation, 7A

---

[4] *See* résumé of Hagens Berman Sobol Shapiro LLP, attached as Exhibit A to the Declaration of Steve W. Berman ("Berman Decl."), filed herewith.

1    Wright, Miller & Kane, FEDERAL CIVIL PROCEDURE 2D, § 1778 at 528-29 (2d ed. 1986).

2              **a.    The RICO claim presents common issues**

3              Predominance is a test that is "readily met" in "certain cases alleging consumer or

4    securities fraud …." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). "Such

5    situations involve an 'underlying scheme' to defraud a large group of purchasers which

6    focuses the court's inquiry on the conduct of the defendant rather than that of individual

7    plaintiffs, making it particularly susceptible to common, generalized proof." *Schwab*,

8    449 F. Supp. 2d at 1115 (quoting *Falise v. American Tobacco Co.*, 94 F. Supp. 2d 316,

9    35 (E.D.N.Y. 2000)). This is just such a case. Differences among class members' indivi-

10   dual damages are inherent in RICO and other class litigation, and do not preclude a find-

11   ing of predominance. *See*, *e.g.*, *Blackie,* 524 F.2d at 905; *Winkler v. DTE, Inc.*, 205

12   F.R.D. 235, 244 (D. Ariz. 2001) (quoting *Blackie*, 524 F.2d at 905); *Gunnells v. Health-

13   plan Servs., Inc.*, 348 F.3d 417, 429 (4th Cir. 2003); *In re Visa Check/MasterMoney

14   Antitrust Litig.*, 280 F.3d 124, 139 (2d Cir. 2001); *Robinson v. Fountainhead Title Group

15   Corp.*, 257 F.R.D. 92, 94-95 (D. Md. 2009).

16             Courts thus regularly certify classes in RICO cases, and find that common issues

17   predominate over individual ones. See, for example, *Gunnells*, 348 F.3d at 429-30;

18   *Robinson*, 257 F.R.D. at 94-95 (certifying class and citing cases); *Brewer v. Salyer*, 2009

19   U.S. Dist. LEXIS 41627, at *28-29 (E.D. Cal. May 15, 2009); *In re Synthroid Mktg.

20   Litig.*, 188 F.R.D. 295 (N.D. Ill. 1999). Consistent with these cases, the predominance

21   test is readily met in this RICO consumer-fraud case. To succeed on a civil RICO claim,

22   a plaintiff must be able to prove (i) a RICO violation, (ii) injury, and (iii) transaction and

23   loss causation. *See Bridge v. Phoenix Bond & Indem. Co.*, 128 S. Ct. 2131, 2137-38, 170

24   L. Ed. 2d 1012 (2008); *City of New York v. Smokes-Spirits.com, Inc.*, 541 F.3d 425, 439

25   (2d Cir. 2008). Common questions and their predominance over individual issues are

26   established here because Defendants' alleged conduct affected *all* Class members in the

27   same or similar manner, and the focus will be on *Defendants' conduct*, not Plaintiffs'.

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### b.   The state-law claims present common issues

To prove their statutory unfair-competition claim, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, Plaintiffs must prove Defendants engaged in a scheme to artificially inflate appraisals, knowing that this would increase Class members' home prices, and that those appraisals caused Plaintiffs to pay inflated purchase prices.  Because common issues prevail and individualized proof of reliance and damages play little or no role, the class action procedure is an appropriate vehicle for these claims.  *See Sav-On Drug Stores, Inc. v. Superior Ct.*, 96 P.3d 194 (Cal. 2004).  "In any event, a class action is not inappropriate simply because each member of the class may at some point be required to make an individual showing as to his or her eligibility for recovery or as to the amount of his or her damages."  *Id.* at 204.

Plaintiffs will also prove unjust enrichment with class-wide evidence.  Central to the claim is whether Defendants unjustly acquired revenue or profits by virtue of a deceptive and unfair scheme to inflate appraisals and, hence, purchase prices; an issue common to all proposed Class members and provable on a class-wide basis.  *See In re Abbott Labs. Norvir Anti-Trust Litig.*, 2007 U.S. Dist. LEXIS 44459, at *25-27 (N.D. Cal. June 11, 2007) (citing *Schumacher v. Tyson Fresh Meats, Inc.*, 221 F.R.D. 605, 612 (D. S.D. 2004)).  Here, Rule 23(b)(3)'s predominance requirement is satisfied for Plaintiffs' unjust-enrichment claim because common proof can be used to establish the central issues of Defendants' intent and knowledge, causation, and aggregate damages.

### c.   A common methodology will determine Class members' damages

Issues of varying individual damages do not preclude the use of a Rule 23(b)(3) class action.  *See Yokoyama v. Midland Nat'l Life Ins. Co.*, __ F.3d __, 2009 U.S. App. LEXIS 19357, at *17 (9th Cir. Haw. Aug. 28, 2009); *Blackie*, 524 F.2d at 905.  In fact, the Advisory Committee notes, "a fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action [under Rule 23(b)(3)] and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class."  Notes

010120-12  347101 V1

1    Accompanying Fed. R. Civ. P. 23(b)(3).

2         Plaintiffs propose a methodology to calculate damages for the Class in a manner

3    consistent with the flexibility permitted by Rule 23 and also respecting Defendants' due-

4    process rights.  Plaintiffs have retained an economic consulting firm, ECONorthwest, to

5    develop a database and employ regression analysis to determine individual and aggregate

6    damages.  The accompanying declaration of Plaintiffs' expert, Dr. Bryce Ward, an

7    ECONorthwest senior economist ("Ward Decl."), summarizes this analysis.  He explains

8    that Defendants allegedly conducted or facilitated a scheme that inflated appraisal values

9    for the proposed Class members' properties.  The Inflated Appraisal Scheme involved

10   appraisals that:  ignored relevant data on housing markets; included "comparable" pro-

11   perties that were distant from subject properties; included "comparable" properties that

12   were sufficiently dissimilar from the subject properties (*e.g.*, single story compared to

13   multiple story) that they should have been excluded from the group of comparable pro-

14   perties; and, included "comparable sales" where the prospective buyer had abandoned the

15   transaction and thus did not actually represent a property sale.  Ward Decl. ¶ 4.  Dr. Ward

16   has determined it is feasible to develop a database to conduct a statistical analysis of

17   transactions for the Class members' properties.  The database and analysis would allow

18   him to calculate an expected sales price or market value for the subject properties.  To the

19   extent the subject properties' actual sale prices exceed the expected sales prices derived

20   from the sale of comparable properties, this would indicate that the alleged appraisal

21   scheme inflated appraised values and sale prices of the subject properties.  *Id*. ¶ 5.

22        Although Plaintiffs' expert has, to date, no access to Defendants' documents, he

23   has begun to populate his database with public information, including assessor data from

24   Maricopa County, Arizona, on all property transactions within the county, and statistical

25   analyses of residential property values from the Arizona Dept. of Revenue.  *Id*. ¶ 6.

26   Dr. Ward describes the level of detail available in this data.  The Assessors' data includes

27   over 100 variables describing structural characteristics of homes and properties, as well

28   as other location data, such as the subdivision or neighborhood.  *Id*. ¶¶ 12-13.

010120-12  347101 V1

When he has completed his database, Plaintiffs' expert will conduct a statistical analysis of the data that will compare the subject properties' sale price with the sale price of properties that have structural and location characteristics comparable to the subject properties. Economists and appraisers refer to this type of statistical analysis as a "hedonic analysis." Hedonic analyses are based on the fact that the value of an individual property depends on its physical characteristics and location. Such analysis describes the statistical relationship between a property's features and market value, and takes into account that physical and location characteristics differ among properties, but also that individual buyers value these characteristics differently. Hedonic analyses use data on *completed* sales transactions that involve an exchange of money and property. *Id.* ¶ 7.[5]

Plaintiffs' expert explains that hedonic analysis is a widely used and accepted valuation method. Economists have calculated property values using hedonic analysis for over 30 years, and this technique is currently used throughout North America, Europe and elsewhere. This technique has been subject to scientific peer review, including through publications of research in academic journals. Practitioners and researchers have continued refining and improving the method over many years of research, application and peer review. The fact that hedonic analyses have been used to value individual pro-perties, as well as on a community-wide basis, demonstrates the technique's acceptance within the valuation community, and its analytical flexibility and robustness. *Id.* ¶¶ 8-9. Indeed, county assessors in Arizona use hedonic analyses to conduct mass appraisals of property values for residential properties. *Id.* ¶¶ 14, 16.

Here, the data and hedonic analysis that Plaintiffs' expert describes can reliably measure the impact of the Inflated Appraisal Scheme, and thus each Class member's damages. Employing the same basic statistical approach used by Arizona county assessors to calculate the market value of subject and comparable properties, the analysis

---

[5] The term "hedonic" is used to describe events in a model that would be factored into a mass appraisal to demonstrate the economic effect thereof to the property's value. *In re Katrina Canal Breaches Consol. Litig.*, 2007 U.S. Dist. LEXIS 82887, at *277 n.4 (E.D. La. Nov. 1, 2007); *Freeland v. AT&T Corp.*, 238 F.R.D. 130, 149 n.15 (S.D.N.Y. 2006).

010120-12  347101 V1

will calculate the value of individual properties based on a statistical analysis of the sale prices of properties with comparable structural and location attributes, and for transactions contemporaneous to the sale of the subject property.  *Id*. ¶ 16.  When completed, this analysis will thus establish causation and damages with common methodology for each proposed Class member, without need to consider individual issues of law or proof.

The analyses have also been used in other litigation concerning property values. *Id.* ¶¶ 8-11.  In class actions, courts have accepted similar forms of hedonic regression analysis to support a finding of predominance.  See, for example, *Sher v. Raytheon Co.*, 2009 U.S. Dist. LEXIS 93127, at *17-19, *61-62 (M.D. Fla. Sept. 30, 2009) (accepting hedonic analysis as "a viable model for calculating property damages on a class-wide basis"); *In re Zyprexa Prods. Liab. Litig.*, 253 F.R.D. 69, 183 (E.D.N.Y. 2008) ("hedonic price analysis is a methodology that is being quite widely used in economics to try to understand differences in pricing"); *O'Connor v. Boeing North Am., Inc.*, 184 F.R.D. 311, 341 (C.D. Cal. 1998).  *See also In re Katrina Canal Breaches Consol. Litig.*, 2007 U.S. Dist. LEXIS 82887, at *277-78 (E.D. La. Nov. 1, 2007) (denying motion to exclude plaintiffs' expert report employing hedonic analysis offered in support of class certification).  This is so even where, at the class-certification stage, the model is incipient, as long as a final model can be "presented prior to the merits portion of this case and for use during that phase."  *Sher*, 2009 U.S. Dist. LEXIS 93127, at *20.  The *Sher* court found it particularly pertinent that, as in the present case, the local county property appraiser employed the same methodology.  *See id*.; Ward Decl. ¶¶ 14, 16.

In short, it is difficult to discern any non-common questions, other than individual damages.  And even such damages issues do not weigh against finding predominance.

**2.     A class action is superior to other available methods for the fair and efficient adjudication of this action**

Rule 23(b)(3) provides that certification is appropriate if class treatment "is superior to other available methods for the fair and efficient adjudication of the controversy." As with the predominance element, courts generally find class actions to be the superior mechanism for litigating cases involving a common course of conduct and a large

010120-12  347101 V1

1    number of possible class members, such as securities litigation.  See, for example, *Harris*

2    *v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913 (9th Cir. 1964) (citing 3

3    MOORE'S FEDERAL PRACTICE ¶ 23.10 at 3448 (2d ed. 1963)).  The superiority inquiry

4    involves determining whether the class procedure's objectives will be achieved in the

5    particular case and comparing alternative mechanisms of dispute resolution.  *Hanlon*, 150

6    F.3d at 1023.  Superiority is demonstrated where "classwide litigation of common issues

7    will reduce litigation costs and promote greater efficiency."  *Valentino v. Carter-Wallace,*

8    *Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

9        The Rule identifies four factors pertinent to the superiority inquiry:  (i) the interest

10   of members of the class in individually controlling the prosecution or defense of separate

11   actions; (ii) the extent and nature of any litigation concerning the controversy already

12   commenced by or against members of the class; (iii) the desirability or undesirability of

13   concentrating the litigation of the claims in the particular forum; and (iv) the difficulties

14   likely to be encountered in managing a class action.  Rule 23(b)(3)(A)-(D).

15       Here, class certification promotes judicial efficiency because common claims and

16   issues will be tried once with a binding effect on all parties.  Applying Rule 23(b)(3)'s

17   factors, Class members have no interest in nor can they afford to individually control

18   prosecution of the RICO and state-law claims.  Indeed, Plaintiffs have not identified any

19   individual litigation on behalf of Arizona or Nevada home buyers relating to Plaintiffs'

20   allegations.  *See generally Hanlon*, 150 F.3d at 1023 ("[f]rom either a judicial or litigant

21   viewpoint, there is no advantage in individual members controlling the prosecution of

22   separate actions").  If any Class member does elect to prosecute alone, Rule 23 would

23   permit that member to opt-out.  *See*, *e.g.*, *Thomas & Thomas Rodmakers, Inc. v. Newport*

24   *Adhesives & Composites, Inc.*, 209 F.R.D. 159, 168 (C.D. Cal. 2002).  The predominance

25   of common issues of fact and law (*see supra* at 6, 9-14) augments class members' inter-

26   ests in pooling their efforts and concentrating the litigation in a single forum.  *See id.*

27       As to manageability, any such problems must be factual, unavoidable obstacles to

28   the litigation before they can be considered obstacles to class certification.  *See*, *e.g.*,

1   *Ballard v. Equifax Check Servs.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999). Plaintiffs' RICO

2   claim presents no such problems, given the predominance of common issues. *Cf.*,

3   *Williams*, 568 F.3d at 1358. This case is not especially complex. The legal issues are

4   identical for all class members and there is a common nucleus of operative facts that bind

5   the Class. Concerns about managing this litigation should not impede class certification.

6        Class actions are also an appropriate and manageable vehicle for resolving Plain-

7   tiffs' unfair-competition claims under Cal. Bus. & Prof. Code §§ 17200 *et seq.* because

8   these statutory causes of action provide relief "without individualized proof of deception,

9   reliance, and injury." *Bank of the West v. Superior Ct.*, 833 P.2d 545, 553 (Cal. 1992).

10  California courts routinely certify § 17200 claims for class treatment. *See, e.g., Sav-On*

11  *Drug Stores, Inc. v. Superior Ct.*, 96 P.3d 194 (Cal. 2004) (reversing court-of-appeal writ

12  directing trial court to vacate order certifying § 17200 claim seeking recovery for drug-

13  pricing scheme); *Mass Mut. Life Ins. Co. v. Superior Ct.*, 97 Cal. App. 4th at 1294

14  (affirming certification of § 17200 claim: "the ultimate question of whether the undis-

15  closed [or affirmatively misrepresented] information was material [i]s a common ques-

16  tion of fact suitable for treatment in a class action"); *Corbett v. Superior Ct.*, 101 Cal.

17  App. 4th 649, 670 (2002) (referring to the "common practice … of certifying UCL

18  [§ 17200] claims in appropriate cases").

19       A class action is also appropriate to resolve Class members' unjust enrichment

20  claim because under the facts alleged in this case, the primary issue – whether Defen-

21  dants acted unjustly – is common to all proposed Class members. *See, e.g., Perez v. First*

22  *Am. Title Ins. Co.*, 2009 U.S. Dist. LEXIS 75353, at *18-19 (D. Ariz. Aug. 12, 2009)

23  (certifying unjust-enrichment claim and citing cases). To the extent the laws of two

24  different states apply, there are no substantive differences in the law. But to the extent

25  there are differences, Class members can be subclassed based on meaningful distinctions.

26  *See, e.g., Steinberg v. Nationwide Mut. Ins. Co.,* 224 F.R.D. 67, 77-78 (E.D.N.Y. 2004).

27       Adjudicating Plaintiffs' claims on a class basis will eliminate the possibility of

28  repetitive litigation and inconsistent rulings on the same operative facts, thus promoting

010120-12 347101 V1

1  judicial economy.  Moreover, no other practical litigation alternative exists; if class

2  members were required to proceed with separate actions here – and assuming they do so

3  rather than abandoning their claims – this litigation would be unwieldy and unmanage-

4  able.  Class treatment of Plaintiffs' claims is thus the most efficient and equitable means

5  to resolve the parties' dispute.  *See McPhail*, 247 F.R.D. at 615; *Wiegele v. FedEx*

6  *Ground Package Sys.*, 2008 U.S. Dist. LEXIS 10246, at *34-36 (S.D. Cal. Feb. 12,

7  2008).  Given the economic infeasibility of bringing many small individual claims, it is

8  unlikely that Class members would prosecute their claims separately.  The unequal

9  economic power of Class members compared to economically powerful Defendants

10  further weighs against individual suits.  *See Las Vegas Sands*, 244 F.3d at 1163.

11  Because individual litigation of each claim would be inefficient and impracticable,

12  and because of the commonality of all claims, a class action is the superior method for

13  adjudicating this action.  *See Epstein v. MCA, Inc.*, 50 F.3d 644, 668 (9th Cir. 1995)

14  (reversing denial of class certification; class action was superior to other methods because

15  otherwise thousands of identical complaints would have to be filed), *rev'd on other*

16  *grounds*, 516 U.S. 367 (1996).  The class-action device is superior to and more manage-

17  able than any other procedure available for treating the factual and legal issues raised by

18  Plaintiffs' claims.  Moreover, Plaintiffs submit a proposed trial plan that shows this

19  matter can be efficiently tried.  Berman Decl., Ex. B.

20  For reasons enumerated above, the proposed Class satisfies the requirements of

21  Rule 23(a) and 23(b)(3).

22  **IV.   CONCLUSION**

23  For the reasons set forth above, the Court should grant Plaintiffs' motion.  A

24  proposed form of Order is attached.

25

26

27

28

010120-12  347101 V1

1    DATED:  January 19, 2010

2                                                       HAGENS BERMAN SOBOL SHAPIRO LLP

3

4                                                       By _____s/ Robert B. Carey_____
                                                            Robert B. Carey
5                                                           Donald Andrew St. John
                                                        2425 East Camelback Road, Suite 650
6                                                       Phoenix, Arizona  85016

7                                                       HAGENS BERMAN SOBOL SHAPIRO LLP

8

9                                                       By _____s/ Steve W. Berman_____
                                                            Steve W. Berman
10                                                          Erin K. Flory
                                                            Thomas E. Loeser
11                                                          Genessa Stout
                                                        1301 Fifth Avenue, Suite 2900
12                                                      Seattle, Washington  98101

13

14                                                      *Attorneys for Plaintiffs and the Proposed Class*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**CERTIFICATE OF SERVICE**

2

I hereby certify that on January 19, 2010, I electronically transmitted the attached

3

document to the Clerk's office using the CM/ECF System for filing and transmittal of a

Notice of Electronic Filing to the following CM/ECF registrant(s):

4

5

- **Bruce A. Abbott**
6
   Bruce.Abbott@mto.com,
- **Steve W. Berman**
7
   steve@hbsslaw.com
- **Brad D. Brian**
8
   Brad.Brian@mto.com
- **Jonathan Grant Brinson**
9
   jonathan.brinson@bryancave.com
- **Robert B. Carey**
10
   rcarey@hbsslaw.com
- **Hailyn J. Chen**
11
   hailyn.chen@mto.com
- **Truc T. Do**
12
   truc.do@mto.com
- **Kelly Ann Kszywienski**
13
   kkszywienski@swlaw.com
- **Thomas Loeser**
14
   toml@hbsslaw.com
- **William Thomas Luzader , III**
15
   wtl@kflawaz.com
- **Patricia Lee Refo**
16
   prefo@swlaw.com
- **Peter C. Renn**
17
   Peter.Renn@mto.com
- **Robert W. Shely**
18
   rwshely@bryancave.com
- **James Demosthenes Smith**
19
   jdsmith@bryancave.com
- **Donald Andrew StJohn**
20
   andy@hbsslaw.com
- **Genessa A. Stout**
21
   genessa@hbsslaw.com

22

23

24

25

26

By _____s/ Steve W. Berman_____

27

Steve W. Berman

28

- 19 -

010120-12  347101 V1