1  BRYAN CAVE LLP, 00145700
2  Robert W. Shely (No. 014261)
   James D. Smith (No. 016760)
3  Jonathan G. Brinson (No. 025045)
   Two North Central Avenue, Suite 2200
4  Phoenix, Arizona 85004-4406
5  Telephone: (602) 364-7000
   Facsimile: (602) 364-7070
6  rwshely@bryancave.com
   jdsmith@bryancave.com
7  jonathan.brinson@bryancave.com
8
   Attorneys for Defendants Countrywide Financial
9  Corporation, Countrywide Home Loans, Inc.,
   Countrywide Mortgage Ventures, LLC,
10 Countrywide-KB Home Loans, LandSafe, Inc.,
11 and LandSafe Appraisal Services, Inc.

12              **UNITED STATES DISTRICT COURT**

13                  **DISTRICT OF ARIZONA**

14 Nathaniel Johnson and Kristen Petrilli;          CV-09-972-PHX-FJM
   Abraham Nieto; Gloria and Charles Lewis;
15 Fabian and Maria Patron, on behalf of
   themselves and all others similarly situated,
16
17              Plaintiffs,                          COUNTRYWIDE/LANDSAFE
                                                     DEFENDANTS' OPPOSITION TO
18         vs.                                       PLAINTIFFS' MOTION FOR CLASS
                                                     CERTIFICATION
19 KB Home, a Delaware corporation;
   Countrywide Financial Corporation, a
20 Delaware corporation, Countrywide Home            (Oral Argument Requested)
   Loans, Inc., a New York corporation;
21 Countrywide Mortgage Ventures, LLC, a
   Delaware company; Countrywide-KB Home
22 Loans, an unincorporated association of
   unknown form; LandSafe, Inc., a Delaware
23 corporation; LandSafe Appraisal Services,
   Inc., a California corporation; and Does 1
24 through 1000,
25
26              Defendants.
27
28

*Left margin (vertical):* BRYAN CAVE LLP, TWO NORTH CENTRAL AVENUE, SUITE 2200, PHOENIX, ARIZONA 85004-4406, (602) 364-7000

# Table Of Contents

Table of Authorities .................................................................................................. iii

Table of Conventions ............................................................................................... vi

Introduction ............................................................................................................... 1

Background ................................................................................................................ 1

    A.    The Individual Issues In Home Sales In Arizona And Nevada .................... 1

    B.    The Named Plaintiffs' Transactions .......................................................... 1

        1.    The Patrons Paid Less Than the Supposed "True Value". ................................................................................................ 1

        2.    The Johnson/Petrillis Agreed to Pay the Contract Price Despite Having a Contrary Appraisal. ........................................ 2

        3.    The Lewises Could not Find a House for Less Than $400,000. ......................................................................................... 3

        4.    Mr. Nieto Paid a Fair Price Based on the Market. ........................ 3

Argument ................................................................................................................... 4

Prefatory Note:  The Applicable Legal Standard ..................................................... 4

I.     PLAINTIFFS CANNOT SATISFY RULE 23(B)(3)'S PREDOMINANCE REQUIREMENT ................................................................ 4

    A.    Individual Issues Preclude Certifying a RICO Class ................................ 5

        1.    Establishing That Appraisals Were "Inflated" Requires Individual Proof. ............................................................................ 5

        2.    Individual Issues Regarding Scienter Predominate ........................ 7

        3.    RICO Direct Causation Requires Individualized Proof .................. 8

            a.    Direct causation here requires reliance .................................. 9

            b.    Direct injury requires individualized proof ......................... 11

    B.    Individual Issues Preclude Certifying An Unjust Enrichment Class. ......... 13

    C.    Individual Issues Preclude Certifying A § 17200 Class. .......................... 14

        1.    Individual Reliance and Causation Issues Predominate, Precluding Certification ............................................................... 14

        2.    The Underlying RICO Claim on Which Plaintiffs Rely Dooms Certification ................................................................... 15

        3.    The Supposed Violations of a Federal Regulation and an Arizona Statute Doom Certification ........................................... 15

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

4.   Assertions of "Unfair" and "Deceptive" Conduct Also Hinge on Individual Issues ................................................................ 16

5.   Restitution—the Only Available Remedy—Requires Individual Inquiries ........................................................................... 16

II.   PLAINTIFFS CANNOT SATISFY RULE 23(B)(3)'S SUPERIORITY REQUIREMENT ............................................................ 16

Relief Requested ............................................................................................ 17

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

ii

# Table Of Authorities

**Cases:**                                                                   **Page(s)**

Agostino v. Quest Diagnostics, Inc.,
   256 F.R.D. 437 (D.N.J. 2009) ................................................................ 5,7

Anza v. Ideal Steel Supply Corp.,
   547 U.S. 451 (2006).......................................................................... 8,9

Bridge v. Phoenix Bond & Indem. Co.,
   128 S. Ct. 2131 (2008)....................................................................... 9,12

Bristo v. Lycoming Engines,
   2008 U.S. Dist. LEXIS 30424 (E.D. Cal. March 28, 2008) ........................... 17

Cohen v. DIRECTV, Inc.,
   178 Cal. App. 4th 966 (2009) .......................................................... 14-15

Deitz v. Comcast Corp.,
   2007 U.S. Dist. LEXIS 53188 (N.D. Cal. July 11, 2007) ............................. 14

Dungan v. The Academy at Ivy Ridge,
   2008 U.S. Dist. LEXIS 56757 (N.D.N.Y. July 21, 2008),
   aff'd, 2009 U.S. App. LEXIS 18798 (2d Cir. Aug. 20, 2009) ....................... 10

First Nationwide Bank v. Gelt Funding Corp.,
   27 F.3d 763 (2d Cir. 1994) ............................................................ 9,17

G&G TIC, LLC v. Ala. Controls, Inc.,
   2008 U.S. Dist. LEXIS 75269 (M.D. Ga. Sept. 29, 2008) .............................. 8

Gowen v. Tiltware, LLC,
   2009 U.S. Dist. LEXIS 43970 (D. Nev. May 19, 2009) ................................. 13

Hanon v. Dataproducts Corp.,
   976 F.2d 497 (9th Cir. 1992) .............................................................. 4

Hemi Group, LLC v. City of N.Y.,
   2010 U.S. LEXIS 768 (Jan. 25, 2010)..................................................... 9

In re Neurontin Mktg. & Sales Practices Litig.,
   2010 U.S. Dist. LEXIS 1756 (D. Mass. Jan. 8, 2010)................................. 9,10

In re Tobacco II Cases,
   46 Cal. 4th 298 (2009)..................................................................... 15

In re Vioxx Class Cases,
   2009 Cal. App. LEXIS 2008 (Dec. 15, 2009) ........................................... 16

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

iii

6565833/0233623

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

*In re Wells Fargo Home Mortgage Overtime Pay Litig.*,
  2010 U.S. Dist. LEXIS 3132 (N.D. Cal. Jan. 13, 2010).................................................6,12

*Ironworkers Local Union No. 68 v. AstraZeneca Pharms. LP*,
  585 F. Supp. 2d 1339 (M.D. Fla. 2008)...............................................................................8

*Johnston v. HBO Film Mgmt., Inc.*,
  265 F.3d 178 (3d Cir. 2001) ...............................................................................................7

*Kaldenbach v. Mut. of Omaha Life Ins. Co.*,
  100 Cal. Rptr. 3d 637 (App. 2009) ..................................................................................15

*Kelley v. Microsoft Corp.*,
  2009 U.S. Dist. LEXIS 35590 (W.D. Wash. Apr. 10, 2009) ....................................13-14

*Kennedy v. Natural Balance Pet Foods, Inc.*,
  2010 U.S. App. LEXIS 248 (9th Cir. Jan. 6, 2010)............................................................4

*Lester v. Percudani*,
  217 F.R.D. 345 (M.D. Pa. 2003) ..............................................................................5,11,17

*Martinelli v. Petland, Inc.*,
  2010 U.S. Dist. LEXIS 5965 (D. Ariz. Jan. 26, 2010) ....................................................10

*Martinelli v. Petland, Inc.*,
  2009 U.S. Dist. LEXIS 69313 (D. Ariz. Aug. 7, 2009) ..............................................9,10

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215, 231 (2d Cir. 2008) ....................................................................................13

*Murray v. Fin. Visions, Inc.*,
  2008 U.S. Dist. LEXIS 93419 (D. Ariz. Nov. 6, 2008) .................................................4-5

*O'Connor v. Boeing N. Am., Inc.*,
  197 F.R.D. 404 (C.D. Cal. 2000)....................................................................................6-7

*Poulos v. Caesars World, Inc.*,
  379 F.3d 654 (9th Cir. 2004) ........................................................................................8,10

*Princess Cruise Lines, Ltd. v. Superior Court*,
  101 Cal. Rptr. 3d 323 (App. 2009) ..................................................................................14

*Trustmark Ins. Co. v. Bank One Ariz., N.A.*,
  202 Ariz. 535, 48 P.3d 485 (Ct. App. 2002)....................................................................13

*Vinole v. Countrywide Home Loans, Inc.*,

iv

571 F.3d 935 (9th Cir. 2009) .................................................................................... 4

Zinser v. Accufix Research Inst., Inc.,
 253 F.3d 1180 (9th Cir. 2001) ...........................................................................16-17

**Statutes, Rules, and Other Authorities:**                                      **Pages(s):**

18 U.S.C. § 1964 .................................................................................................... 17

A.R.S. § 32-3633 .................................................................................................... 15

Cal. Bus. & Prof. Code § 17200 ..................................................................14,15,16,17

Cal. Code Civ. Pro. § 1021.5 ................................................................................. 17

12 C.F.R. § 33.44 .................................................................................................... 15

Fed. R. Civ. P. 23 ...............................................................................................1,4,10,16

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

v

**Table Of Conventions**

| Convention | Reference |
|---|---|
| F. Patron Dep. | Deposition of Fabian Patron (12/17/09), excerpts attached as Ex. 7 to the Smith Decl. |
| FAC | First Amended Class Action Complaint (7/21/09) (Dkt. 32) |
| Heaton Decl. | Declaration of Craig S. Heaton (1/5/10), attached as Ex. 1 to the Smith Decl. |
| Howard Decl. | Declaration of Brian Howard (2/3/10), attached as Ex. 2 to the Smith Decl. |
| Johnson Dep. | Deposition of Nathan Johnson (12/18/09), excerpts attached as Ex. 4 to the Smith Decl. |
| Lewis Dep. | Deposition of Charles Lewis (12/15/09), excerpts attached as Ex. 5 to the Smith Decl. |
| Loeser Ltr. | Letter from T. Loeser to R. Shely et al. (2/2/10), attached as Ex. 13 to the Smith Decl. |
| M. Patron Dep. | Deposition of Maria Patron (12/17/09), excerpts attached as Ex. 8 to the Smith Decl. |
| Nieto Dep. | Deposition of Abraham Nieto (1/19/10), excerpts attached as Ex. 6 to the Smith Decl. |
| Petrilli Dep. | Deposition of Kristen Petrilli (12/18/09), excerpts attached as Ex. 9 to the Smith Decl. |
| Smith Decl. | Declaration of James D. Smith in Support of Countrywide/LandSafe Defendants' Opposition to Plaintiffs' Motion for Class Certification |
| Stenberg Decl. | Declaration of Don J. Stenberg (11/24/09), attached as Ex. 3 to the Smith Decl. |
| Stone Dep. | Deposition of David Stone (1/21/10), excerpts attached as Ex. 10 to the Smith Decl. |
| Trial Plan Resp. | Countrywide/LandSafe Defendants' Response to Plaintiffs' Proposed Trial Plan, attached as Ex. 12 to the Smith Decl. |
| Ward Dep. | Deposition of Bryce Ward (1/28/10), excerpts attached as Ex. 11 to the Smith Decl. |

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

vi

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

### Introduction

Plaintiffs' proposed class cannot be certified under Federal Rule of Civil Procedure 23(b)(3) because individual issues overwhelm all else.  By way of example only, the Court must evaluate for each of 10,000 home sales: whether the appraisal accurately reflected the home's value; if not, whether the appraiser made simple mistakes or acted with the necessary intent to inflate the appraisal; whether the purchaser relied on the appraisal when buying his/her home at the height of the market frenzy; and whether the purchaser paid less than the supposed "true market value" of the house, regardless of the amount of the appraisal.  These Defendants also join in KB Home's certification opposition.

### Background

**A.      The Individual Issues In Home Sales In Arizona And Nevada.**

Plaintiffs' putative class (defined at FAC ¶ 167) includes all KB Home purchasers who obtained a loan through a Countrywide entity and an appraisal through LandSafe from January 1, 2006, through the present in Arizona or Nevada.[1]  In the Las Vegas area, KB Home had more than 90 projects with more than 4,800 homes for which a loan closed with Countrywide-KB Home Loans.  In the Phoenix market, it had approximately 43 projects with more than 2,900 homes.  Tucson included approximately 38 projects involving more than 1,600 homes.   The named Plaintiffs here represent only three Phoenix-area developments: (a) Retreat at Santarra (Buckeye), (b) Preserve at Santarra (Buckeye), and (c) Mesquite Cove (Surprise).  Retreat at Santarra involved 48 sales with Countrywide-KB Home Loans, Preserve at Santarra 65 sales, and Mesquite Cove 156 sales.  [Howard Decl. ¶¶ 3-7]

**B.      The Named Plaintiffs' Transactions.**

**1.      The Patrons Paid Less Than the Supposed "True Value."**

Fabian and Maria Patron signed their contract with KB on April 10, 2005, depositing $8820 toward the purchase.  [M. Patron Dep. at 59:9-60:3; F. Patron Dep. at 78:11-14]

---

[1]  This brief sometimes refers to "Countrywide" generically rather than distinguishing among the separate Countrywide entities.  While they are distinct legal entities, there generally is no need to address those distinctions in this brief.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

That purchase included a $9000 lot premium and $22,000 in upgrades, for a total price of $251,690.  [Id. at 56:9-57:2, 58:9-11; FAC ¶ 146]  Plaintiffs contend that the "true value" of the Patrons' home was $253,190, or $1500 more than they agreed to pay.  [FAC ¶ 151]  Nothing about this transaction injured the Patrons; they obtained a home for less than what Plaintiffs contend it was worth.  Both Mr. and Mrs. Patron admitted that KB should have raised their contract price to match that "true value" and that they would have completed the transaction had KB done so.  [F. Patron Dep. at 18:1-18:10; M. Patron Dep. at 13:22-14:8]  Prior to the close of escrow, no one told the Patrons the amount of the appraisal.  [M. Patron Dep. at 72:7-72:10; F. Patron Dep. at 66:9-17]  That did not surprise the Patrons, considering that they agree that appraisals are for the benefit of lenders and not buyers like them.  [M. Patron Dep. at 63:13-63:20, 91:23-92:3; F. Patron Dep. at 64:4-7]

### 2.   The Johnson/Petrillis Agreed to Pay the Contract Price Despite Having a Contrary Appraisal.

Nathaniel Johnson and Kristen Petrilli spent one weekend in Arizona in May 2005 searching for homes and restricted their search "because of the lotteries that were going on at the time.  There was a long waiting list in a number of areas."  [Johnson Dep. at 49:12-50:2]  A lot premium of $15,000 and their selected upgrades of $112,129 brought their total contract price to $396,699.  [Id. at 64:2-10, 68:10-13, 71:16-72:1]

The Johnson/Petrillis wanted to use 100% financing through a Veterans Administration loan.  [Id. at 59:2-9]  Navy Federal Credit Union hired an appraiser who concluded that the house was worth $351,000 in March 2006.  [Id. at 90:15-92:12]  Thus, the Johnson/Petrillis would have to pay the difference of more than $40,000 if they wanted to use their preferred lender.  KB Home then suggested that they seek financing from Countrywide.   [Id. at 101:9-17]   The Johnson/Petrillis discussed the situation and completed this transaction fully aware of the credit union appraisal valuing the house at $40,000 below the contract price.  [Id. at 119:25-120:14]  Ms. Petrilli agreed, "this was the best home that [we] could find in Phoenix for under $400,000."  [Petrilli Dep. at 88:15-19]

### 3.     The Lewises Could not Find a House for Less Than $400,000.

The Lewises asked a realtor to assist them in searching for a new home in Arizona in September 2005 and at closing in Fall 2006. [Lewis Dep. at 33:5-9, 87:18-20] Initially, the Lewises thought that a price of $150,000 would be reasonable, but they could not find a home they liked for even $275,000. [Id. at 144:5-13] The Lewises contracted to pay $410,000 for a home they selected in September 2005. [Id. at 116:1-25] That included $80,000 in upgrades owing to "the fact that [Mrs. Lewis] wanted the house a particular way." [Id. at 67:4-10] In June 2006, KB Home reduced the price by $62,800. [Id. at 24:14-16, 26:14-19] The home appraised at $348,000 in September 2006, which was approximately the revised price the Lewises paid at closing. [Id. at 116:1-25]

The Lewises knew they could have used a different lender and forgone incentives offered by KB. [Id. at 63:10-19] Mr. Lewis thought about a VA loan but "it wouldn't cover the full amount, the full cost of the home. . . . I would have to be responsible out-of-pocket for the rest of it." [Id. at 65:23-66:21] The Lewises also could have bought a less expensive home "but it wouldn't have been what we were looking for." [Id. at 158:10-13] While the FAC alleges (¶ 151) that the Lewises' home had a true value of only $275,000, Mr. Lewis could not find "any homes that were satisfactory to what [he] and [his] wife wanted in the $275,000 range." [Id. at 166:12-23; see also id. at 188:23-189:6]

### 4.     Mr. Nieto Paid a Fair Price Based on the Market.

Mr. Nieto saw prices rising every week by up to $7000 due to market demand when he was shopping for a home. [Nieto Dep. at 271:4-11] He and his wife selected a six-bedroom KB Home and added more than $50,000 in upgrades, bringing the total price to $383,812 in June 2005—well above their budgeted $300,000. [Id. at 198:17-199:25] As Mr. Nieto admits, he and his wife "bought the house right at a very hot time in the market when prices were rising." [Id. at 291:19-23] The Nietos' earnest money deposit was only $3500, or 0.9% of the purchase price. [Id. at 309:12-311:10]

The Nietos did not see the appraisal before closing on their house purchase. [Id. at 289:6-9; 316:8-22] The appraisal in April 2006 valued the home at $415,000, but

BRYAN CAVE LLP
Two North Central Avenue, Suite 2200
Phoenix, Arizona 85004-4406
(602) 364-7000

3

Plaintiffs' FAC (¶ 151) contends that the "true value" was $251,332.  Mr. Nieto concedes, however, that it is "ridiculous to suggest that [he] could have bought that house given the market and market prices for $251,000 as of June, 2005".  [Nieto Dep. at 320:15-21]  Plaintiffs' appraiser agrees that his $251,332 figure is ridiculous; it resulted from his $100,000 typographical error, and the real "true market value" was $351,332. [Stone Dep. at 143:7-144:23]  Mr. Nieto admits that he was not defrauded—he paid the amount that he agreed to pay.  [Nieto Dep. at 323:14-324:1]  It was a "fair price in light of what was happening in the housing market at that time."  [Id. at 324:24-325:4]  He agrees that "[n]obody lied to [him] or cheated [him]."  [Id. at 326:11-18]

**Argument**

**Prefatory Note: The Applicable Legal Standard**

Plaintiffs must satisfy each requirement of Rule 23(a) and at least one of the categories of Rule 23(b) for class certification.  "The party seeking class certification must demonstrate that certification is warranted, and the court must conduct a 'rigorous analysis' to determine that the prerequisites of Rule 23 have been met."  Kennedy v. Natural Balance Pet Foods, Inc., 2010 U.S. App. LEXIS 248, *2 (9th Cir. Jan. 6, 2010).  Courts should consider evidence relevant to the requirements of Rule 23 "even [if] the evidence may also relate to the underlying merits of the case."  Hanon v. Dataproducts Corp., 976 F.2d 497, 509 (9th Cir. 1992) (internal quotations omitted).  "The district court may consider the merits of the claims to the extent that it is related to the Rule 23 analysis . . . ."  Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 947 n.15 (9th Cir. 2009).[2]

## I.   PLAINTIFFS CANNOT SATISFY RULE 23(B)(3)'S PREDOMINANCE REQUIREMENT.

"The proponent of a Rule 23(b)(3) class must show not only the existence of common questions of law or fact, but also must show that the common questions of law or fact predominate over any questions affecting only individual members."  Murray v. Fin.

---

[2]   The Countrywide/LandSafe Defendants focus on the predominance and superiority requirements of Rule 23(b)(3) as they subsume the typicality and commonality requirements of Rule 23(a).

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1   Visions, Inc., 2008 U.S. Dist. LEXIS 93419, *12 (D. Ariz. Nov. 6, 2008).  Certification is

2   "ordinarily not appropriate" when significant individual issues of liability, defenses to

3   liability, and damages exist.  Id. at *14 (denying certification).  Because the Court must

4   analyze each class member's transaction separately to determine whether any injury

5   occurred or whether Defendants' alleged acts caused harm to the class member, this case is

6   readily distinguishable from the RICO cases on which Plaintiffs rely (at 7, *ll*. 14-16).

7        **A.   Individual Issues Preclude Certifying a RICO Class.**

8        **1.   Establishing that appraisals were "inflated" requires individual proof.**

9        "A court may deny certification where proof of an essential element of a cause of

10  action requires individualized inquiry into the facts underlying the plaintiff's claim."

11  Agostino v. Quest Diagnostics, Inc., 256 F.R.D. 437, 457 (D.N.J. 2009) (denying

12  certification of RICO class).  In Lester v. Percudani, 217 F.R.D. 345 (M.D. Pa. 2003), the

13  plaintiffs alleged that the defendants defrauded home buyers through inflated appraisals

14  (among other things).  Certification was not appropriate because "the very fact of injury,

15  apart from the amount of damages, depends almost entirely on individual circumstances:

16  the difference between the appraised value and the actual value of the home . . . ."  Id. at

17  352.  Here, Plaintiffs contend that Defendants conspired to use "inflated" or "fraudulent"

18  appraisals in each of approximately 10,000 home sales.  [E.g., FAC ¶¶ 83-102]  That

19  supposed fraud underlies the RICO claim.  In their brief, however, Plaintiffs offer no

20  serious explanation as to how they will establish with common proof that each class

21  appraisal is flawed.  In truth, there is no way of doing so.

22       Plaintiffs allege that Defendants "inflated" the appraisals by varying amounts: from

23  3.3% for the Patrons to 21.2% for the Lewises.  [FAC ¶ 151]  Plaintiffs also contend that

24  each of the four appraisers involved made different mistakes.  [FAC ¶¶ 127-49]  There is

25  not an alleged uniform method of "inflating" the appraisals or uniform amount of

26  "inflation."  Plaintiffs do not point to any relevant corporate policy affecting each appraisal

27  or any method to conclude that every appraisal was "fraudulent."  Even if such a policy

28  existed (it never has), "this court must consider the full range of factors presented by the

5

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1   issues in this case when determining whether issues common to the class would

2   predominate over individual inquiries." In re Wells Fargo Home Mortgage Overtime Pay

3   Litig., 2010 U.S. Dist. LEXIS 3132, *17 (N.D. Cal. Jan. 13, 2010) (refusing certification

4   despite uniform policy for classifying employees).

5       In fact, Plaintiffs' own witness agrees with Defendants.  Plaintiffs' counsel hired

6   David Stone to critique the class representatives' appraisals and opine on the homes' "true

7   value."  [See FAC ¶¶ 129, 139, 144, 148, 151]  According to Mr. Stone, it is "not a fair

8   assumption" to conclude that a home was overpriced simply because the county assessor's

9   records show a lower price for a similar home. [Stone Dep. at 63:10-14]  Mr. Stone agrees

10  that the only way to determine if class members' appraisals were flawed is to examine each

11  individually.  He concedes that "you would have to make that inquiry about whether an

12  appraisal was reasonable or questionable, again, on an individual appraisal-by-appraisal

13  home-by-home basis[.]"  [Id. at 130:14-131:19]  Further refuting the possibility of class

14  treatment, Mr. Stone said that "I personally would not" try to extrapolate his review of a

15  handful of appraisals to reach conclusions about the absent class members' appraisals

16  (which appears to be Plaintiffs' proposed methodology). [Id. at 184:19-185:10; see also id.

17  at 87:4-88:18]  Indeed, Mr. Stone's work for Plaintiffs illustrates why 10,000 separate

18  evaluations are needed: he conceded that the Patrons' appraisal was not artificially inflated.

19  [Id. at 121:10-122:1]  Likewise, a labor union working with Plaintiffs' counsel sent Mr.

20  Stone a number of appraisals for review; he concluded that some of them were

21  "reasonable." [Id. at 84:1-85:18]  The only way to determine if an appraisal is "reasonable"

22  or "questionable" is to thoroughly review each one. [Id. at 85:23-87:3]

23      Thus, Plaintiffs' expert concedes that one quarter of the class representatives'

24  appraisals do not support a RICO claim.  And this is not merely a difference in supposed

25  damages.  Rather, this is a difference between whether or not a fraud ever occurred, which

26  is the predicate for Plaintiffs' RICO claim.  Because the existence of wrongdoing requires a

27  separate analysis for each sale, individual issues predominate.

28      One of Plaintiffs' cases (cited at 14) supports Defendants.  In O'Connor v. Boeing

6

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

North America, Inc., 197 F.R.D. 404 (C.D. Cal. 2000), the court decertified the class because individual issues predominated. That case involved property damage claims due to pollution from a nuclear facility. The court rejected the plaintiffs' trial plan that, like Plaintiffs' here, purported to deal with individual issues in the final stage. The dispute would require "a series of mini-trials" on liability for each class member, which doomed certification. Id. at 418-19.[3] Those plaintiffs' hedonic damages model could not overcome that fact. Here, Plaintiffs' trial plan also requires mini-trials for each class member. Even their damages expert, Bryce Ward, plans to use his hedonic model to calculate individually a "true market value" for each class member's home based on each home's unique characteristics. [See Trial Plan Resp.]

## 2. Individual issues regarding scienter predominate.

Even if Plaintiffs somehow could establish with common proof that all 10,000 appraisals were flawed, they also must prove that flaws arose from an intent to deceive. "To successfully prosecute a RICO claim, it is well settled that a plaintiff must make a showing regarding scienter. . . . A plaintiff must show that the defendant had the specific intent to defraud . . . ." Agostino, 256 F.R.D. at 457. That court refused to certify a RICO class because the plaintiffs could not establish that each alleged medical overbilling arose from an intent to defraud (as opposed to errors). "[A]ny proof of scienter will only surface pursuant to patient-by-patient and transaction-by-transaction analyses rather than from evidence applicable to the entire Class or Subclasses." Id.; accord, e.g., Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 189 (3d Cir. 2001) (affirming denial of RICO class certification; each salesperson's scienter was individual issue).

Plaintiffs never explain how they will establish with any proof—common or otherwise—that anyone acted with the requisite mental state. Indeed, the only evidence comes from Don Stenberg, who appraised the Lewis property, and Craig Heaton, who appraised the Patron property. Both men testified that (1) no Defendant encouraged them to inflate appraisals, (2) they adhered to all applicable professional standards, and (3) they

---

[3] Plaintiffs fail to note the decertification when citing an earlier decision in that case.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

did not have predetermined values in mind when preparing those named Plaintiffs' appraisals.  [Stenberg Decl. (11/24/09) ¶¶ 6, 8, 10, 11; Heaton Decl. (1/5/10) ¶¶ 6, 7, 9, 11]  In fact, Plaintiffs' appraiser admits that he made a $100,000 error when calculating the "true value" of the Nieto home; it should have been $351,332 rather than the $251,332 stated in the FAC (¶ 151).  [Stone Dep. at 143:7-144:23]  Plaintiffs also informed Defendants on February 2, 2010, that Mr. Stone recently concluded that the "corrected appraised value" of the Johnson/Petrilli house is $340,000.  [Loeser Ltr. at 4]  The Navy Federal Credit Union appraiser—who presumably had no incentive to "inflate" her appraisal—valued that same property at $351,000, and the LandSafe appraiser valued it at $395,000.  A jury cannot assume that all discrepancies are due to an intent to deceive as opposed to mere mistakes or differences in professional opinion.

No one person can establish that every appraiser in all 10,000 transactions had the necessary mental state.  This dooms certification because Plaintiffs must establish through common proof that each person created/approved a flawed appraisal because of the "scheme."  See Ironworkers Local Union No. 68 v. AstraZeneca Pharms. LP, 585 F. Supp. 2d 1339, 1344 (M.D. Fla. 2008) (refusing to certify RICO class; evidence needed from each doctor as to whether he/she prescribed medicine because of false marketing).

### 3.    RICO direct causation requires individualized proof.

Plaintiffs also must prove with common evidence that the appraisals directly injured each class member.  "Causation lies at the heart of a civil RICO claim.  Lumping claims together in a class action does not diminish or dilute this requirement."  Poulos v. Caesars World, Inc., 379 F.3d 654, 664 (9th Cir. 2004).  A "[p]laintiff must still satisfy the proximate cause principles articulated in Anza [v. Ideal Steel Supply Corp., 547 U.S. 451 (2006)].  This requires allegations that someone relied upon a misrepresentation by the defendants and that the reliance directly caused harm to the plaintiff."  G&G TIC, LLC v. Ala. Controls, Inc., 2008 U.S. Dist. LEXIS 75269, *13 (M.D. Ga. Sept. 29, 2008) (granting motion to dismiss) (citation omitted), aff'd, 324 F. App'x 795 (11th Cir. 2009).  "[I]n the RICO context, the focus is on the directness of the relationship between the conduct and the

harm." <u>Hemi Group, LLC v. City of N.Y.</u>, 2010 U.S. LEXIS 768, *20 (Jan. 25, 2010) (directing dismissal of RICO claim).   The "central question" is "whether the alleged violation led directly to the plaintiff's injuries." <u>Anza</u>, 547 U.S. at 461 (directing dismissal of RICO claims; plaintiffs could not establish that fraud, and not market forces, directly caused injury).

"The key reasons for requiring direct causation include avoiding unworkable difficulties in ascertaining what amount of the plaintiff's injury was caused by the defendant's wrongful action as opposed to other external factors, and in apportioning damages between causes." <u>First Nationwide Bank v. Gelt Funding Corp.</u>, 27 F.3d 763, 770 (2d Cir. 1994).   It is not enough to allege that appraisals had flaws or that Plaintiffs paid more than their appraiser now contends the homes were worth; Plaintiffs must show that Defendants' wrongful conduct—as opposed to simple mistakes or differences in opinion— caused such conditions.   "Plaintiffs must provide a damages model that segregates damages caused by unlawful conduct from damages caused by lawful conduct." <u>In re Neurontin Mktg. & Sales Practices Litig.</u>, 2010 U.S. Dist. LEXIS 1756, *78 (D. Mass. Jan. 8, 2010) (granting summary judgment against RICO class action plaintiffs).

### a.      Direct causation here requires reliance.

<u>Bridge</u> explained that a plaintiff must show that <u>someone</u> relied on the alleged deception as part of RICO mail fraud. <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 128 S. Ct. 2131, 2144 (2008).   "<u>Bridge</u> made clear, however, that while reliance is not an element of the cause of action, 'the complete absence of reliance may prevent the plaintiff from establishing proximate cause'." <u>Martinelli v. Petland, Inc.</u>, 2009 U.S. Dist. LEXIS 69313, *12-13 (D. Ariz. Aug. 7, 2009) (quoting <u>Bridge</u>, 128 S. Ct. at 2144).

<u>Martinelli</u> dismissed a putative RICO class action alleging misrepresentations regarding how the defendants bred puppies:

> Plaintiffs must allege facts showing that Petland's statements about the origins of its puppies were a direct cause of Plaintiffs' injuries.   Although reliance is not the only way a plaintiff can establish causation in a civil RICO claim predicated on mail or wire fraud, the Court concludes that this is a case where proof of reliance is a milepost on the road to causation.

9

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1   2009 U.S. Dist. LEXIS 69313, *13 (citation and internal quotations omitted); see also, e.g.,

2   Neurontin, 2010 U.S. Dist. LEXIS 1756, *78 (granting summary judgment when RICO

3   plaintiffs failed to establish reliance on false advertising).[4]

4   The individualized reliance determination leads courts to refuse to certify RICO

5   class actions, even after Bridge.  In Dungan v. The Academy at Ivy Ridge, 2008 U.S. Dist.

6   LEXIS 56757 (N.D.N.Y. July 21, 2008), aff'd, 2009 U.S. App. LEXIS 18798 (2d Cir. Aug.

7   20, 2009), the court refused to reconsider its earlier order denying class certification.

8   "[T]he problem for Plaintiffs is that they do allege that they relied on Defendant's claimed

9   misrepresentations and that it was this first-person reliance that caused them to sustain

10  damages."  2008 U.S. Dist. LEXIS 56757, at *11 (distinguishing Bridge).

11  Here, Plaintiffs expressly allege such first-party reliance: "Plaintiffs and the Class

12  relied on Defendants' false and misleading statements in entering into the transactions at

13  issue."  [FAC ¶ 221]  "The Johnsons, then, based on that appraisal, agreed to purchase the

14  KB [home]."  [Id. ¶ 128]  "Had Mr. Nieto not been subjected to the Scheme, he would not

15  have entered into the contract at the contract price agreed to and would not have been

16  'upside down' from day one."  [Id. ¶ 140; see also id. ¶¶ 145 & 150 (regarding the Lewises

17  and Patrons)]  Plaintiffs must establish that each class member knew of each appraisal and

18  relied on it as part of the purchasing decision; that is only possible with individualized

19  proof.  It is not enough for Plaintiffs to assert vaguely that unidentified others "relied" on

20  the appraisals.  Even if that were true, others' purported reliance did not—and could not—

21  injure Plaintiffs.  Each class member's reliance and purchasing decision is an individual

22  issue that hinges on separate proof, making Rule 23(b)(3) certification inappropriate.  See,

23  e.g., Poulos, 379 F.3d at 658 (affirming denial of certification of RICO class; individual

24  reliance needed to prove that misrepresentation caused injury).

25  Whether the alleged scheme harmed a particular class member also hinges on the

26

27  [4]   The Court dismissed the amended complaint in Martinelli 10 days ago: "Plaintiffs'
    conclusory allegation that they unwittingly purchased puppy mill dogs '[a]s a direct result
28  of Defendants' fraudulent scheme' . . . is insufficient to survive the motions to dismiss."
    Martinelli v. Petland, Inc., 2010 U.S. Dist. LEXIS 5965, *16 (D. Ariz. Jan. 26, 2010).

10

information available to him or her individually.  As Plaintiffs allege (FAC ¶ 83), some homebuyers "extracted large price concessions from KB Home" after they learned of falling prices.  Presumably, any class member who did so believed that he understood the market and where it was headed.  He was not relying on an appraisal to educate himself— he acted on his own to negotiate a price reduction and purchased the home because he believed that the reduced price reflected the "true market value."  Such class members are not in the same position as class members who did not do so.  Similarly, some class members (like the Lewis and Patron Plaintiffs) received professional advice from realtors.  [Lewis Dep. at 33:5-9, 87:18-20; F. Patron Dep. at 33:10-12]  Defendants have the right to present such information to the jury so it can evaluate whether each class member consummated his/her transaction based on a real estate professional's advice.

Plaintiffs do not even attempt to meet their burden of showing that they can use common proof to establish each class member's reliance on the supposedly "inflated" appraisals.  This alone is sufficient to deny certification.

**b.      Direct injury requires individualized proof.**

Even if Plaintiffs were not required to prove each class member's reliance on his/her appraisal, they still cannot meet their burden with common proof.  In Lester, the plaintiffs had to show that the alleged fraud (including "allegedly improper appraisals") "actually caused plaintiffs to purchase the homes at an inflated price."  217 F.R.D. at 353 (denying RICO certification).  Plaintiffs here must (but cannot) prove with common evidence that each class member paid an "inflated price" because of his/her appraisal or otherwise suffered an injury caused by the supposed scheme.

The Patrons exemplify the need for such individual analyses: they admit they paid $1500 less than the home's "true value."  [See FAC ¶¶ 147, 151]  Even using Plaintiffs' theory of the case, the Patrons' transaction would have proceeded in the same manner had Defendants used an "accurate" appraisal.  The loan would fund, the sale would close, and the market downturn would reduce the home's value.  The "inflated" appraisal did not alter the transaction at all.  Just as with the Patrons, it is impossible to know whether any class

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

6565833/0233623

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

member suffered any injury without analyzing his or her transaction separately.  There is no way to determine the existence of injury other than by comparing the contract price to the "true value" separately for each class member.  Plaintiffs tacitly concede this point as their expert, Ward, proposes just such individual analyses.  [Ward Dep. at 74:8-75:25]  "Plaintiff has not identified a single case in which a court certified an overbroad class that included both injured and uninjured parties."  Wells Fargo, 2010 U.S. Dist. LEXIS 3132, *24.

Another individual issue is whether class members knew of the allegedly-inflated appraisal but proceeded anyway.  For example, Mr. Johnson and Ms. Petrilli received a VA appraisal of their home for $40,000 less than the contract price.  Nonetheless, they decided to buy the home at that "inflated" price through a loan with a Countrywide entity.  Going forward in light of such knowledge breaks the causal chain.  See Bridge, 128 S. Ct. at 2144 (entity proceeding knowing of falsehood would "break the chain of causation between the petitioners' misrepresentations and the respondents' injury").  There is no way of determining whether class members proceeded with such knowledge other than by separately evaluating each homebuyer's situation.

Determining the existence of direct injury also requires comparing the class member's non-refundable deposit to her supposed injury.  Plaintiffs argue that class members would have canceled their contracts if "honest" appraisals existed because (presumably) no Defendant would have agreed to fund the loan.  [Plfs.' Opp'n Countrywide/LandSafe Mot. Dismiss (9/8/09) (Dkt. 52) at 3]  But Plaintiffs agree (id. at 3) that each class member would forfeit her deposit if she canceled the purchase.  Thus, the Court must look at each class member's situation to determine if she "overpaid" more than the amount of the deposit she would forfeit at cancellation; if the forfeited deposit(s) exceed the "overpayment," the supposed scheme did not injure the class member.  This evaluation is inherently individualized.[5]

The non-uniform nature of the supposed over-valuing of homes also makes damages calculations incredibly complex.  The parties will need to evaluate every class member's

---

[5] KB also could pursue a breach of contract claim against the canceling buyer.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1   appraisal to determine whether it is accurate and, if not, the amount of the inaccuracy.

2   "[W]hile the fact that damages may have to be ascertained on an individual basis is not,

3   standing alone, sufficient to defeat class certification, it is nonetheless a factor that we must

4   consider in deciding whether issues susceptible to generalized proof 'outweigh' individual

5   issues." McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 231 (2d Cir. 2008) (reversing

6   certification of RICO class) (citations omitted).

### B. Individual Issues Preclude Certifying An Unjust Enrichment Class.

8   For their unjust enrichment claim, Plaintiffs must prove on a classwide basis: "(1) an

9   enrichment; (2) an impoverishment; (3) a connection between the enrichment and the

10  impoverishment; (4) the absence of justification for the enrichment and the

11  impoverishment; and (5) the absence of a legal remedy." Trustmark Ins. Co. v. Bank One

12  Ariz., N.A., 202 Ariz. 535, 541, 48 P.3d 485, 491 (Ct. App. 2002) (citation omitted).

13  Under Nevada law: "The essential elements of unjust enrichment are a benefit conferred on

14  the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance

15  and retention by the defendant of such benefit.  An unjust enrichment claim cannot be

16  predicated upon an express agreement." Gowen v. Tiltware, LLC, 2009 U.S. Dist. LEXIS

17  43970, *36 (D. Nev. May 19, 2009) (internal quotations and citation omitted).

18  Plaintiffs asked Countrywide-KB to loan them money to buy a house at a price that

19  Plaintiffs chose.  If Countrywide-KB loaned money to class members, they received

20  value—a loan with specific terms—in exchange for their promise to repay and a security

21  interest in the home.  Moreover, determining whether Countrywide-KB unjustly received a

22  benefit is a loan-by-loan analysis, particularly because terms and loan status (e.g., current,

23  foreclosed, or home sold) vary with each loan.  For every transaction, the fact finder must

24  compare the value given by Countrywide-KB to what it received and then determine if an

25  unjust enrichment occurred.  A jury must also examine each appraisal separately to

26  determine if it was inflated and, if so, why, as part of any unjust enrichment analysis.

27  "[T]he proposed class cannot assert an unjust enrichment claim because the trier of fact

28  would have to determine whether [Countrywide-KB's] profit was inequitable in light of

13

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1  any actual individual deception." <u>Kelley v. Microsoft Corp.</u>, 2009 U.S. Dist. LEXIS

2  35590, *18 (W.D. Wash. Apr. 10, 2009) (denying certification).

3        Likewise, Arizona and Nevada do not permit an unjust enrichment claim when an

4  adequate legal remedy exists.   Thus, the trier of fact will need to determine for each class

5  member if he/she has a contract with Countrywide-KB or other legal remedy.   "Only those

6  class-members who do not have a valid contract with [Countrywide-KB] will be able to

7  pursue an unjust-enrichment claim.   Whether a specific contract is valid will require a case-

8  by-case analysis of many issues . . . ." <u>Deitz v. Comcast Corp.</u>, 2007 U.S. Dist. LEXIS

9  53188, *23-24 (N.D. Cal. July 11, 2007) (denying certification).

10      **C.   Individual Issues Preclude Certifying A § 17200 Class.**[6]

11         **1.   Individual Reliance and Causation Issues Predominate, Precluding Certification.**

12        As described earlier, claims requiring proof of reliance cannot be certified because

13  reliance presents an individual issue that will overwhelm all others.   The Cal. Bus. & Prof.

14  Code § 17200 claim requires just such reliance. <u>E.g.</u>, <u>Princess Cruise Lines, Ltd. v.</u>

15  <u>Superior Court</u>, 101 Cal. Rptr. 3d 323, 328 (App. 2009) ("it is very clear that reliance is

16  required in a UCL action").   Indeed, Plaintiffs concede that their § 17200 claim hinges on

17  individual reliance: "Each of Defendants' omissions was material to Plaintiffs and the Class

18  in entering into the transaction with Defendants, and Plaintiffs and the Class relied on

19  Defendants' false and misleading misrepresentation in entering into the transactions at

20  issue." [FAC ¶ 221]

21        As with the RICO claim, the Court also should not certify a UCL claim because of

22  numerous individual issues relating to causation and the fact of injury.   Absent class

23  members are not entitled to restitution if their appraisals were accurate or if the alleged

24  inaccuracy was not caused by a scheme to defraud.   "[W]e do not understand the UCL to

25  authorize an award for injunctive relief and/or restitution on behalf of a consumer who was

26  never exposed in any way to an allegedly wrongful business practice." <u>Cohen v.</u>

27

28    [6] Defendants reiterate that California law cannot apply to this putative class' claims.

14

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

DIRECTV, Inc., 178 Cal. App. 4th 966, 979 (2009); see also, e.g., Kaldenbach v. Mut. of Omaha Life Ins. Co., 100 Cal. Rptr. 3d 637, 651 (Ct. App. 2009) (affirming refusal to certify UCL class; claim required analysis of "whether there was in fact an unfair business practice," which hinged on each salesperson's conduct).[7]

### 2. The Underlying RICO Claim on Which Plaintiffs Rely Dooms Certification.

Plaintiffs allege (FAC ¶ 218) that supposed RICO violations support their § 17200 claim as the RICO violations would be unlawful. As described earlier, however, individual issues of reliance, direct injury, each appraiser's conduct, and the existence of injury abound in evaluating the RICO claim. A trier of fact must address all of those same individual issues if it is to adjudicate a § 17200 claim based on the same RICO allegations, making certification improper.

### 3. The Supposed Violations of a Federal Regulation and an Arizona Statute Doom Certification.

Plaintiffs also contend (FAC ¶ 218) that using appraisals that ostensibly violate 12 C.F.R. § 33.44 and Defendants' supposed improper influence on appraisers under A.R.S. § 32-3633 support the § 17200 claim as other "unlawful" business practices. Setting aside the inapplicability of that federal regulation and state statute, Plaintiffs' allegations continue requiring individual inquiries. First, each of the 10,000 appraisals is a separate event requiring an individual analysis to determine if it conforms to the Uniform Standards of Professional Appraisal Practice, which Plaintiffs contend 12 C.F.R. § 33.44 requires. Even if an appraisal does not conform, the fact finder must evaluate individually whether Defendants are responsible for its supposed non-compliance or whether Defendants improperly influenced each appraiser. Again, these are consummately individual inquiries. Thus far, the only evidence in the record from appraisers Don Stenberg and Craig Heaton is

---

[7] In re Tobacco II Cases, 46 Cal. 4th 298 (2009), held that standing requirements apply only to the named plaintiffs in putative UCL class actions, so individual proof of injury was not necessary. But that case "involved identical misrepresentations and/or nondisclosures by the defendants made to the entire class." Kaldenbach, 100 Cal. Rptr. 3d at 652. In the absence of identical conduct affecting each class member, individual issues still predominate. Id. at 651 (affirming denial of class certification). The issues here vary with each appraisal and transaction, requiring individualized analyses and proof.

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

1   that no Defendant exerted any improper influence over them or affected their appraisals.

2   ### 4. Assertions of "Unfair" and "Deceptive" Conduct Also Hinge on Individual Issues.

3   Such individual analyses of the 10,000 appraisals also prevent Plaintiffs from

4   relying on arguments that Defendants' conduct was "unfair" under § 17200. [FAC ¶ 219]

5   Presumably, Plaintiffs only contend that the conduct was "unfair" if the appraisals were

6   inaccurate because of Defendants' efforts (as opposed to the appraiser's individual

7   mistakes). The same is true with respect to Plaintiffs' assertion (FAC ¶ 220) that

8   Defendants provided the class "with phony appraisals." The only way to assess those

9   assertions is an appraisal-by-appraisal evaluation that includes testimony from the

10  appraiser.

11  ### 5. Restitution—the Only Available Remedy—Requires Individual Inquiries.

12  Plaintiffs in a § 17200 action "are generally limited to injunctive relief and

13  restitution." In re Vioxx Class Cases, 2009 Cal. App. LEXIS 2008, *25 (Dec. 15, 2009)

14  (affirming denial of certification) (internal quotations omitted). "[I]n order to obtain class

15  wide restitution under the UCL, plaintiffs need establish not only a misrepresentation that

16  was likely to deceive but the existence of a 'measurable amount' of restitution, supported

17  by the evidence." Id. at *41 (citations omitted). Determining measureable restitution here

18  depends on evidence that varies among class members. It devolves into an individual

19  inquiry that compares each class member's down payment (which he/she would forfeit) to

20  some other quantum that Plaintiffs have yet to define. There can be no "restitution" if that

21  undefined quantum of injury is less than the deposit he/she would forfeit. That cannot be

22  determined class wide, and Plaintiffs have not explained how they intend to prove such a

23  "measurable amount" of restitution required by § 17200.

24  ## II. PLAINTIFFS CANNOT SATISFY RULE 23(B)(3)'S SUPERIORITY REQUIREMENT.

25  

26  Rule 23(b)(3) also requires that class treatment be superior to individual litigation.

27  "If each class member has to litigate numerous and substantial separate issues to establish

28  his or her right to recover individually, a class action is not 'superior.'" Zinser v. Accufix

16

1  Research Inst., Inc., 253 F.3d 1180, 1192 (9th Cir. 2001).  Inherent in that analysis is that

2  Plaintiffs "bear[] the burden of demonstrating a suitable and realistic plan for the trial of

3  class claims." Id. at 1189 (internal quotations omitted).  That burden includes showing how

4  they plan to calculate damages for each class member. E.g., Bristow v. Lycoming Engines,

5  2008 U.S. Dist. LEXIS 30424, *19 (E.D. Cal. Mar. 28, 2008) (decertifying § 17200 class

6  when plaintiffs omitted methodology to calculate damages; not defendant's burden to show

7  individualized damages).

8      The parties must analyze every class member's appraisal to determine the existence

9  of injury and the amount of supposed damages.  Those truths "also militate against finding

10  that a class action is the superior method of adjudication of the potential claims here."

11  Lester, 217 F.R.D. at 354.  Plaintiffs cannot offer a meaningful method of distinguishing

12  between the harm allegedly caused by the "scheme" and the overall housing market

13  decline.  The "number of variables that can influence real estate values" is substantial,

14  making it almost impossible to identify what portion of any loss the alleged scheme caused.

15  First Nationwide Bank, 27 F.3d at 770.  A RICO plaintiff must "adequately account for the

16  contribution of external market factors to the loss."  Id. at 771  (affirming dismissal of

17  RICO claim when losses coincided with real estate collapse).

18      Finally, there is ample incentive for class members to pursue claims individually.

19  Plaintiffs assert (FAC ¶ 151) that Defendants inflated the named Plaintiffs' appraisals by up

20  to $163,668, which Plaintiffs contend is the measure of damages.  Moreover, both RICO

21  and the California UCL have fee-shifting provisions.  18 U.S.C. § 1964(c); Cal. Code Civ.

22  Pro. § 1021.5.  "Thus, these individuals should have both the means and the incentive to

23  pursue their claims individually." Lester, 217 F.R.D. at 354 (finding superiority not met).

### Relief Requested

24

25      For the foregoing reasons, the Countrywide/LandSafe Defendants respectfully ask

26  the Court to deny Plaintiffs' class certification motion.

27

28

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

6565833/0233623

DATED this 5th day of February, 2010.

BRYAN CAVE LLP


By: /s James D. Smith
    Robert W. Shely
    James D. Smith
    Jonathan G. Brinson
    Two North Central Avenue, Suite 2200
    Phoenix, Arizona 85004-4406

    Attorneys for Defendants Countrywide
    Financial Corporation, Countrywide Home
    Loans, Inc., Countrywide Mortgage
    Ventures, LLC, Countrywide-KB Home
    Loans, LandSafe, Inc., and LandSafe
    Appraisal Services, Inc.

The foregoing is being electronically filed with the Court and hand-delivered this 5th day of February, 2010, to:

Robert B. Carey
Donald Andrew St. John
Hagens Berman Sobol Shapiro LLP
11 W. Jefferson Street, Suite 1000
Phoenix, Arizona 85003

Attorneys for Plaintiffs

With copies served electronically this 5th day of February, 2010, to the following:

Steve W. Berman
Thomas E. Loeser
Genessa A. Stout
Hagens Berman Sobol Shapiro LLP
1301 Fifth Avenue, Suite 2900
Seattle, Washington 98101

Attorneys for Plaintiffs

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BRYAN CAVE LLP
TWO NORTH CENTRAL AVENUE, SUITE 2200
PHOENIX, ARIZONA 85004-4406
(602) 364-7000

Bruce A. Abbott
Hailyn J. Chen
Peter C. Renn
Brad D. Brian
Munger Tolles & Olson LLP
355 South Grand Avenue, 35th Floor
Los Angeles, California 90071-1560

Patricia Lee Refo
Kelly A. Kszywienski
Snell & Wilmer LLP
400 E. Van Buren Street
Phoenix, Arizona 85004-2202

Attorneys for KB Home

s/ Amy Robinson

19

6565833/0233623